HUGHES v. WESTERN UNION TEL. CO.

1. Damages—Telegraph Companies.—Where a telegram announcing the death of a near relative is not promptly delivered, but too late for addressee to attend the funeral, that he was deprived of the consolation of seeing the face of the dead, of being with the family and of attending the burial, does not confer on him a cause of action; but if he would have gone, and it appears on the face of the telegram that there was a probability for him to arrive in time, if message had been promptly delivered, the company is liable for anxiety and pain caused by the thought of being deprived of this privilege.

The fact that the funeral may have been fixed for a time at which he could not have arrived, does not affect it unless he had notice of the time fixed.

2. IBID.—IBID.—TORT.—An action based on tort for failure to deliver a telegram to addressee in this State, is not governed by the laws of a foreign State from which it is sent as to the measure of damages.

Before WATTS, J., Lancaster, October term, 1904. Affirmed.

Action by W. Alonzo Hughes against the Western Union Telegraph Co. The 6th, 7th, 8th and 9th paragraphs of the complaint are as follows:

"6. That if said message had been promptly transmitted and delivered to plaintiff by defendant, as it was its duty to do, plaintiff could have wired to his family at Coleman when he would arrive there and could have left on an afternoon train on December 18, 1903, and arrived at Coleman at 2.45 p. m.; on December 19, 1903, in plenty of time to have attended the funeral of his said dead brother, which consolation said delay in delivering said telegram deprived him of. That on receipt of said telegram, as before stated, plaintiff immediately sent a telegram to his said sister, at Coleman, but same was not received by her until after plaintiff's brother had been buried.

"7. That after receiving said delayed message by him, as aforesaid, plaintiff left on the earliest train for Coleman, Fla., leaving Heath Springs, which was not until about 11 a. m. on Sunday, 20th December, 1903, and by traveling the quickest and shortest route he did not reach Coleman, Fla., until the afternoon of December 21, 1903, two days after the plaintiff's brother had been buried, to his great mental pain, distress and anguish.

"8. That by reason of defendant's wilful, wanton and gross negligence in not transmitting and delivering promptly said message, plaintiff on arriving at the nearest railroad station to the place where his dead brother's family resided, was not met with a conveyance by any member of his said

brother's family and his own family, as would have been the case had said message been promptly delivered, and in consequence thereof had to walk a distance of one mile and one-half through deep sand, which very much fatigued and discommoded plaintiff, especially after his long and tedious trip by rail from Heath Springs to said railroad station.

"9. That by reason of this wanton, wilful and gross negligence of defendant in failing to promptly transmit and deliver the said message, as aforesaid, the plaintiff was not only fatigued and jaded by his said walk through the deep sand, as stated above, but he was caused great mental anguish, pain and suffering not to have had the privilege of seeing his dead brother's face for the last time and of being with the family before the burial and of attending the burial, all to this damage in the sum of $1,990."

The fourth request of the defendant and modification is:

" '4. The Court charges you that if it appears from the testimony in this case that even if the message in question had been promptly delivered to the plaintiff and the plaintiff by going the shortest and quickest route and using all possible diligence could not have reached and have been with his family before the burial, could not have seen his brother's face before the burial, and could not have arrived in time to have attended the burial, then the plaintiff cannot recover compensatory damages for any mental anguish caused by his not being able to attend the funeral, etc.' I charge you that in this connection, if you believe that was the facts of the case, or if you believe that the plaintiff here didn't intend to telegraph or didn't telegraph, and if he had telegraphed, if you believe they wouldn't have waited, then I charge you that as good law."

From judgment for plaintiff, defendant appeals on the following exceptions:

"1. Because his Honor, the Circuit Judge, erred in refusing to charge the defendant's third request to charge, the same being as follows, to wit: 'Sections eight and nine of the complaint set out the injury and damage plaintiff claims to

have suffered as follows: (Here read the eighth and ninth sections of the complaint.) 'The Court charges you that before the plaintiff is entitled to recover for mental anguish, he must show: (1) not only that the defendant telegraph company did not exercise reasonable diligence, or ordinary care, in delivering the message, but (2) that had it been delivered, without the unreasonable delay alleged, the plaintiff, after receiving it, by the exercise of reasonable diligence, could have seen his dead brother's face, and have been with the family before the burial, and could have attended the burial of his deceased brother, and that he not only *could* have done so, but that he *would* have done so.' Error consisting in that the said request contained a correct statement of the law applicable to the facts in issue.

"2. Because his Honor, the Circuit Judge, erred in refusing to charge the jury defendant's sixth request to charge, the same being as follows, to wit: 'The Court further charges you, as a matter of law, that the plaintiff can only recover as compensatory damages for such consequences as were within the contemplation of the parties to the contract at the time of the sending of the telegram; that is to say, for such consequences as naturally and reasonably flow from a breach of the contract or from negligence in performing any duty imposed by the contract. The Court, therefore, charges you that the telegram constituting the written contract out of which this action arose is not sufficient to put within the contemplation of the defendant telegraph company the possibility of a postponement of a funeral or burial. The telegram is the simple announcement of death. The plaintiff, therefore, is not entitled to recover damages in the way of compensation for mental anguish on account of not being able to see his dead brother and attend his burial, as alleged, on the ground alone that if he had received the said message promptly he could have had the funeral postponed.' Error consisting in that the said request embodied a correct statement of the law applicable to the facts in issue in said cause.

"3. Because his Honor, the Circuit Judge, erred in refusing to charge defendant's seventh request to charge, the same being as follows, to wit: 'That the question of what compensatory damages, if any, plaintiff is entitled to recover, that is to say, the measure of damages, is governed in this case by the law of the State of Florida, where the contract for sending the message involved was made. Under the law of Florida, any mental anguish which does not accompany or proceed from a physical injury, as a consequence of such physical injury, is not an element of damage, and cannot be recovered on account of a breach of contract or negligence. I, therefore, charge you that the plaintiff is not entitled to recover compensatory damages in this case for the mental anguish he claims to have suffered in not seeing his dead brother and attending the funeral, as alleged, due to any breach of contract by the telegraph company, or negligence in transmitting and delivering the telegram involved.' Error consisting in that the said request embodied a correct statement of the law applicable to the facts in issue."

*Messrs. Geo. H. Fearons, Willcox & Willcox* and *J. H. Marion,* for appellant. *Mr. Marion* cites: *It was encumbent on plaintiff to show that he could and would have attended the funeral:* 27 S. W., 760; 55 S. W., 155. *No recovery for mental suffering for not attending the funeral:* 27 S. W., 144; 26 S. W., 490; 27 S. W., 52; 53 S. W., 156; 78 S. W., 491. *If law of foreign State is not in controversy, Court should instruct jury what it is:* Con., art. V., sec. 25; Code 1902, 2890; 25 S. C., 34; 27 S. C., 462. *Law of contract is that of place it is made:* 171 Mass., 158; 129 U. S., 397. *The governing law of a contract is a matter of intention:* 171 Mass., 158; 129 U. S., 397; 82 Fed., 681; 15 Conn., 546; 91 Ill., 268; 112 Mo., 622; 158 N. Y., 688; 65 Tex., 13; 83 Pa., 316; 176 Pa., 45. *In interstate transportation the law of the contract is that of the place where performance begins:* 2 Woods, 244; 43 L. R. A., 210; 24 Ia., 412; 91 Ill., 268; 45 Ia., 470; 22 L. R. A., 335; 4 Inter. Com. R., 494; 55 C. C.

A., 115; 174 Ill., 13; 92 Ia., 231; 160 Mass., 356; 171 Pa.,
158; 25 L. R. A., 81; 33 L. R. A., 654; 23 Fed., 49; 60 Fed.,
625; 82 Ia., 477; 12 L. R. A., 799; 34 L. R. A., 635; 59 S.
W., 945. *As to the measure of damages:* 57 N. Y., 489; 41
L. R. A., 614; 83 Ky., 174; 63 Miss., 291; 22 So., 53; 1 N.
& McC., 67; 37 S. C., 417; 142 U. S., 101; 61 S. W., 501;
34 L. R. A., 492; 69 S. W., 427; 74 S. W., 751; 56 L. R.
A., 486; 45 S. E., 938; 37 S. W., 904; 63 L. R. A., 513; 70
Ill., 275; 100 Ky., 591; 46 S. C., 104. *Contract of sending
must be referred to the established relations of the parties:*
65 S. C., 103; 62 S. C., 230; Thomp. on Law of Elec., sec.
435; 13 Allen, 237; 5 S. C., 370; 56 L. R. A., 489; 45 N.
Y., 113.

*Mr. R. E. Wylie,* contra, cites: *Action is in tort and not
ex contractu, and the damages include compensation for all
injuries resulting:* 43 L. R. A., 214; 91 Tex., 206; 18 S.
W., 701. *If damages for mental anguish are given here it
does not matter what the rule in Florida is:* 27 Ency., 2 ed.,
1079, and authorities cited.

October 31, 1905. The opinion of the Court was deliv-
ered by

MR. JUSTICE GARY. This is an action for damages aris-
ing out of the alleged negligence and wilfulness of the de-
fendant in failing to deliver a telegram addressed to the
plaintiff, announcing the death of his brother. At 12.30
p. m., on the 18th of December, 1903, the sister of the plain-
tiff filed with the defendant at Coleman, Florida, the follow-
ing message, addressed to Alonzo Hughes, Heath Springs,
S. C.:

"John killed at Panasoffkee at mill this morning.
                    "(Signed)   Dora Hughes."

It is alleged that the message was not delivered to the
plaintiff until 2 o'clock p. m. on the 19th of December, 1903,
although it was received by the defendant at its office in
Heath Springs at 8 o'clock a. m. on the 19th of December,

1903. Some time during the afternoon of the 19th of December the plaintiff sent the following telegram to his sister, at Coleman, Florida:

"Telegram received at 2 p. m.    Will come if possible.
                                         "(Signed)    Alonzo."

The sixth, seventh, eighth and ninth paragraphs of the complaint will be set out in the report of the case; also, the defendant's fourth request to charge, together with the modification therof by his Honor, the presiding Judge; also the appellant's exceptions.

The jury rendered a verdict in favor of the plaintiff for $700.

In considering the exceptions, we will refer to them by their numbers.

*First and second exceptions:* Section 2223 of the Code of Laws is as follows: "All telegraph companies doing business in this State shall be liable in damages for mental anguish or suffering even in the absence of bodily injury, for negligence in receiving, transmitting or delivering messages.   Nothing in this section shall abridge the rights or remedies now provided by law against telegraph companies, and the rights and remedies provided for by this section shall be in addition to those now existing.   In all actions under this section the jury may award such damages as they conclude resulted from negligence of said telegraph companies."

It will be well to bear in mind at the outset, that it was not the object of the statute, in a case where a telegraph company negligently fails to deliver a telegram announcing the death of a person, to confer upon the addressee of the message a right of action based upon the fact that he was thereby deprived of the consolation of seeing the face of the dead, being present with the family in the trying hours of sorrow, or taking part in the funeral ceremonies.   These facts may be introduced in evidence, in a proper case, for the purpose of showing mental suffering, but they form no part of the

cause of action, and are merely evidentiary.' *Harrison* v. *Tel. Co.,* 71 S. C., 386. The intention of the statute was to give a right of action for mental anguish suffered by the addressee as a direct and proximate result of the negligent delay in delivering the message. If, when such telegram is received by the addressee, he knows that he could not have arrived in time, then there is no legal foundation for mental anguish arising from the failure to deliver promptly. But, on the contrary, if he would have gone, and it appears upon the face of the telegram that there was a probability for him to have arrived in time, in case it had been promptly delivered, then the thought of being deprived of this privilege would naturally and reasonably be expected to produce anxiety and pain, and may fairly be said to have been in contemplation of the contracting parties. The fact that the parties in charge of the funeral rites may have seen proper to fix a time when it would not have been possible for him to have attended, even if the message had been delivered in time, does not prevent the suffering of mental pain before he had knowledge of such fact, when the telegram showed that there was a probability he would have been able to go in time, if it had been promptly delivered. This interpretation of the statute is just and fair both to the telegraph company and the addressee, as it makes the liability dependent upon facts existing at the time of delivery and which can be made certain, instead of being based upon circumstances that are uncertain, and subject to the caprice of others not parties to the contract. Furthermore, the request set out in the first exception was substantially the same as the request hereinbefore mentioned, which the presiding Judge charged, except as modified and the modification was too favorable to the appellant.

> *Third exception:* The question presented by this exception has been adjudicated in the recent cases of *Hellams* v. *Tel. Co.,* 70 S. C., 63, and *Harrison* v. *Tel. Co.,* 71 S. C., 386.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

Mr. Justice Woods *concurs in the result.*

Mr. Justice Jones, *concurring.* In this action plaintiff recovered a judgment for $700 for alleged negligence and wilfulness in failing to promptly deliver a telegram addressed to plaintiff by his sister, Dora Hughes, in these words: "John killed at Panasofkee at nine this morning." "John" was a brother of the plaintiff. The message was filed with the defendant at Coleman, Florida, at 11.45 A. M., December 18, 1905, according to the testimony of one of plaintiff's witnesses, or at 12.30 P. M. of that day, according to the time of filing, as entered by the defendant on the message blank. This was Central time, which, according to the evidence, is one hour earlier than Eastern time prevailing in South Carolina, that is to say, the message was filed with defendant company at 12.45 P. M., or 1.30 P. M., December 18, 1905, for transmission to plaintiff at Heath Springs, S. C. The message arrived at Heath Springs at 8 o'clock A. M., December 19, 1905, and was not delivered to the plaintiff, residing in Heath Springs, until 2 o'clock P. M. of that day. The burial took place at Adamsville grave-yard, three miles from Coleman and one and a half miles from the home of the deceased, between 3 and 4 o'clock P. M., December 19, Central time, or between 2 and 3 o'clock P. M., Eastern time. The funeral was, therefore, had in Florida a few minutes after the delivery of the telegram in South Carolina.

The plaintiff sometime during the afternoon of December 19, one hour after the receipt of the message, as he testified, but at 5.11 P. M., according to the time of receiving entered on the message, sent his sister the following message: "Telegram received at 2 p. m. Will come if possible." The plaintiff testified that he hesitated about wiring at that time, as he thought the funeral would probably be over with then. He further testified that if the message had been

promptly delivered to him on the 18th, he would have imme-
diately wired that he was coming, and that if it had been
delivered to him before 3 p. m. of that day, he could have
taken a train leaving Heath Springs that afternoon and
could have reached Coleman, Florida, the next day on train
due to arrive there at 2.35 p. m., according to his testi-
mony, but according to the testimony of Mr. R. A. Long
for the defendant, at 3.05 p. m.   The train did not actually
arrive at Coleman, Florida, on the 19th of December, until
after the funeral, which took place between 3 and 4 o'clock.
Miss Dora Hughes testified that the burial was not post-
poned for the arrival of plaintiff because she failed to hear
from him, and did not know whether he was coming or not;
that she expected hourly a reply from plaintiff as to when
he would come on, but no message was received from plain-
tiff until the afternoon of December 19, 1903, after the
burial; that she sent a conveyance two or three times to the
nearest railroad station to meet plaintiff, whom she expected
by every train.   The plaintiff left Heath Springs, S. C., for
Coleman, Florida, on the morning of the 20th, and arrived
on the afternoon of the 21st, two days after the funeral.

The complaint alleged that, if said message had been
promptly transmitted and delivered, plaintiff could have
wired to his family at Coleman when he would arrive there,
and could have left on an afternoon train on December 18,
1903, and arrived at Coleman at 2.45 p. m. on December
19, 1903, in plenty of time to have attended the funeral of
his dead brother, of which consolation he was deprived by
said delay in delivering the message.   That by reason of this
wilful, wanton and gross negligence of defendant, in failing
to promptly transmit and deliver the said message, plaintiff
was caused great mental anguish, "not to have had the privi-
lege of seeing his dead brother's face for the last time, and
of being with the family before the burial, and of attending
the burial."   The foregoing statement will enable us to
better understand the application of defendant's requests to

charge which were refused by the Circuit Court, and to which exceptions have been taken.

First exception. The defendant requested the Court to charge the jury as follows: "The Court charges you that before the plaintiff is entitled to recover for mental anguish, he must show: (1) not only that the defendant telegraph company did not exercise reasonable diligence or ordinary care in delivering the message; but, (2) that had it been delivered, without the unreasonable delay alleged, the plaintiff, after receiving it, by the exercise of reasonable diligence, could have seen his dead brother's face, and have been with the family before the burial, and could have attended the burial of his deceased brother, and that he not only *could* have done so, but that he *would* have done so." It is alleged that this is a correct statement of the law and applicable to the facts in issue.

It is a well understood rule that when a request to charge is presented to the Court containing both sound and unsound propositions of law, it is not the duty of the Court to separate the charge and instruct the jury as to that portion of the charge which is correct, but the Court may, without committing reversible error, refuse the request. While the proposition of law contained in the first clause of the above request is undoubtedly correct, that contained in the second clause is not wholly free from error. The complaint alleged three matters the deprivation of which caused mental suffering: (1) the privilege of seeing his dead brother's face for the last time; (2) of being with the family before the burial; (3) of attending the burial. The deprivation of any one of these privileges or consolations, if due to the negligent conduct of defendant, would have afforded ground of recovery for resulting mental suffering, but the request to charge made recovery dependent on the deprivation of *all* said privileges. Damages for mental anguish are recoverable when such damages are the natural and proximate result of the negligence charged. It is, therefore, doubtless true that mental suffering cannot be said to so arise, if the sufferer by

the use of the means and instrumentalities available after prompt delivery of a telegram could not have secured to himself the privilege the deprivation of which caused him mental suffering, or if he could have secured such privilege by the use of available means, that he would not have availed himself of such means. In such a case, the mental suffering arising from such deprivation is not due to the negligence of the telegraph company, but to an efficient intervening cause for which the telegraph company is in no wise responsible. Whether in this case the failure to postpone the burial for the arrival of plaintiff on the first train that would have been available, if the telegram had been promptly delivered, was the natural and proximate result of the negligent delay in delivering the telegram, is a question that may more properly be noticed in considering the next exception.

The second exception is based upon the refusal to charge the following request: "The Court further charges you as a matter of law that the plaintiff can only recover as compensatory damages for such consequences as were within the contemplation of the parties to the contract at the time of the sending of the telegram; that is to say, for such consequences as naturally and reasonably flow from a breach of the contract or from negligence in performing any duty imposed by the contract. The Court, therefore, charges you that the telegram, constituting the written contract out of which this action arose, is not sufficient to put within the contemplation of the defendant telegraph company the possibility of the postponement of the funeral or burial. The telegram is the simple announcement of the death. The plaintiff is, therefore, not entitled to recover damages in the way of compensation for mental anguish on account of not being able to see his dead brother and attend his burial, as alleged, on the ground alone that if he had received the said message promptly he could have had the funeral postponed." This request to charge is subject to criticism in assuming that the rule as to damages is precisely the same whether the action is upon a contract or in tort. In actions for damages

for breach of contract, it is usual to say that compensatory damages may be recovered for such consequences as are within the contemplation of the parties to the contract at the time of contracting, but in an action in tort it is usual and proper to say that compensatory damages may be recovered for such consequences as naturally and proximately result from the negligence of performing a duty imposed by law. In this case the action is by the addressee of the telegram, and his right of action is based upon a breach of duty imposed by general law, although such duty springs out of a relation arising from the contract, and the defendant is, therefore, responsible in damages for mental anguish that naturally and proximately resulted from breach of duty imposed by law to promptly deliver the telegram.   It may be that damages may result as a natural and proximate consequence of an act or omission and yet not be within the actual contemplation of the parties at the time of the contract, unless it be true that a party must be conclusively presumed to contemplate whatever naturally and proximately results from his act or omission.   But, waiving this criticism of the request to charge, we are disposed to respond to the question sought to be raised, viz: when it appears that the plaintiff, seeking recovery for mental anguish on account of not being able to attend a relative's funeral, could not have been present at the funeral even if the message involved had been delivered in due time, can such plaintiff recover on the ground that if the message had been seasonably delivered he could have telegraphed and had the funeral postponed.   Appellant submits that he could not unless: (1) the tenor of said message was such as to put the telegraph company on notice that there was reasonable probability of the postponement of the funeral or burial; and (2) unless it appears that he would have had the funeral postponed for the purpose of attending it.

With reference to the second reason suggested above, we may remark, as already stated, that there was evidence that plaintiff would have telegraphed of his coming if the mes-

sage had been delivered in due time and that the funeral would have been postponed until his arrival on December 19, if notice of his coming had been received.   So that the real question presented is, whether the tenor of the message was such as to put the telegraph company on notice that there was reasonable probability of the postponement of the funeral, or, more accurately stated, whether the failure to postpone the funeral was a natural and proximate result of the defendant's failure to deliver the message in seasonable time.   Appellant cites to sustain its contention, the case of *W. U. Tel. Co.* v. *Stone* (Texas), 27 S. W., 144, the syllabus of which is : "In an action for delay in delivering a telegram announcing the death of plaintiff's mother, plaintiff cannot recover for mental suffering resulting from not being able to attend the funeral, where it appears that he could not have reached the place where it was held in time had the message been promptly delivered, though he testified that he would have wired to have it put off."   To the same effect, appellant cites from Texas, *W. U. Tel. Co.* v. *Lynn,* 26 S. W., 490 ; *W. U. Tel. Co.* v. *Motley,* 27 S. W., 52 ; *W. U. Tel. Co.* v. *Redlinger,* 53 S. W., 156 ; *Swearingen* v. *W. U. Tel. Co.,* 78 S. W., 491.

The foregoing principle may be correct, if the evidence went no further than to show that plaintiff would have wired to have the funeral postponed.   This would fall short of showing that the funeral would have been postponed in consequence of the telegram, a deficiency of evidence in the Texas cases which was supplied in the present case.   On the contrary, in *Tel Co.* v. *Zane,* 25 S. W., 722, it was held that (quoting from the syllabus) : "A telegram stating that J. is dangerously sick, is sufficient to notify the company that J. was a relation of the addressee, that it was sent to enable him to go to J., and that that would be the probable action taken on its receipt."   In the case of *Swearingen* v. *Tel. Co., supra,* cited by appellant, it was held that (quoting from the syllabus) : "damages from a father's failure to be present at his son's funeral on account of delay in the transmission

of a telegram reading, 'Come, Frank is dead,' are within the contemplation of the parties to the contract of transmission, and are recoverable, though a reply message from the father would have been necessary to secure a postponement of the funeral, so as to admit of his reaching the place of interment in time." The only difference between that case and this case is that the telegram in the Swearingen case contained the word "come" in addition to the notification as to death. But we do not regard the difference as essential in principle. When the message relates to the serious illness or death of a person a telegraph company is bound to take notice that the addressee has an interest in the subject of the message, and that in the case of a near relative the probability is that the addressee will follow the promptings of nature and respond to the message and, if possible, at once set out to attend the sick bedside or the funeral, as the case may be. The telegraph company is bound to know that mental suffering may be the result of failure to deliver a death message, and whether it thinks of it or has it in actual contemplation at the time of the contract of transmission is of no consequence, provided the mental suffering results naturally and proximately from its negligence in doing its duty. In the case of *Harrison* v. *Berkley,* 1 Strob., 525, a slave's death was held to be the natural and proximate result of the sale of liquor to him in violation of law, which produced intoxication which resulted in exposure from which he died. In the case of *Pickens* v. *R. R. Co.,* 54 S. C., 504, 32 S. E., 567, it was held proper to submit to the jury whether the injury to the plaintiff from exposure to a sudden storm, after she left the depot because of the defendant's failure to provide transportation according to contract, was the natural and proximate result of such breach of duty. In this case there was some evidence tending to show that the failure to postpone the funeral was the result of the failure of plaintiff to telegraph as to his coming, and that plaintiff's failure to so telegraph and to take the train for Coleman, Fla., on the afternoon of December 18, was the result of the long delay

of defendant in delivering the telegram; that is to say, had the telegram been promptly delivered, plaintiff would have wired at once that he was coming, and would have taken a train which would have enabled him to have reached the place of the funeral in time. A postponement of the funeral for one hour would have been sufficient.

Had the Judge charged as requested, he would have taken from the jury a question which properly belonged to them, it being their province, where there is any evidence at all tending that way, to determine whether the injury alleged is the proximate result of the negligence charged.

The third exception imputes error in refusing to charge the following request: "The question of what compensatory damages, if any, plaintiff is entitled to recover—that is to say, the measure of damages—is governed in this case by the law of the State of Florida, where the contract for sending the message involved was made. Under the law of Florida, any mental anguish which does not accompany or proceed from a physical injury, is not an element of damage, and cannot be recovered on account of a breach of contract or negligence. I, therefore, charge you that the plaintiff is not entitled to recover in this case for the mental anguish he claims to have suffered in not seeing his dead brother and attending the funeral, as alleged, due to any breach of contract by the telegraph company, or negligence in transmitting and delivering the telegram involved." The action not being based upon a Florida contract, but being in tort for a breach in this State of a duty imposed by the laws of this State, it was proper to refuse the request. *Hellams* v. *Tel. Co.*, 70 S. C., 83; *Harrison* v. *Tel. Co.*, 71 S. C., 386.

The exceptions are overruled and the judgment of the Circuit Court is affirmed.