## 15658

**EINBINDER et al. v. WESTERN UNION TELEGRAPH CO.**
(30 S. E. (2d), 765)

*Mr. Francis R. Stack,* of New York City, and *Messrs. Nelson, Mullins & Grier,* of Columbia, S. C., Counsel for Appellant,

*Mr. Richard T. Mayer,* of Columbia, S. C., Counsel for Respondent,

June 15, 1944.

MR. ASSOCIATE JUSTICE TAYLOR delivered the Opinion of the Court, with Mr. Associate Justice Oxner filing a Concurring Opinion and Mr. Associate Justice Stukes filing a Dissenting Opinion. The Opinion of the Court follows:

This is an appeal from a case tried by the Hon. A. W. Holman, Judge of the Richland County Court, without a jury. The complaint alleges that the plaintiff was engaged in the maintenance and operation of a photographic studio in the City of Columbia. The complaint also alleges that the defendant, Western Union Telegraph Company, was at the time involved in the action a common carrier of telegraph messages for hire and that on July 7, 1942, the plaintiff wrote and delivered to the Columbia office of the said defendant a message addressed to Marks & Fuller, Inc., 44 East Avenue, Rochester, N. Y., as follows:

"Send us 10 rolls $3\frac{1}{4}$ by 250 ft. direct positive paper."

The complaint further alleges that the plaintiff paid on demand the charge made by the defendant of 88¢ and that the defendant agreed to transmit such message promptly and accurately to the addressee, but that in disregard and in violation of its duties to plaintiff and in the breach of its contract, the defendant erroneously transmitted the message as follows:

"Send us 10 rolls $3\text{-}\frac{1}{2}$ by 250 ft. direct positive paper."

The allegations continue that the addressee of the telegram in accordance with the apparent wishes of the sender immediately shipped paper $3\frac{1}{2}$ inches in width which the plaintiff immediately returned to the shipper, with the advice that plaintiff's telegraphic order was for $3\frac{1}{4}$ inch film and not $3\frac{1}{2}$, as delivered, and that the photographic equipment of plaintiffs was not adapted to the use of the $3\frac{1}{2}$ inch paper; that thereafter Marks & Fuller, Inc., advised the plaintiffs that whereas they could have supplied the proper size of paper when the telegram involved was received, that when the information was received as to what the plaintiffs actually required in the way of paper, same was not to be had. Plaintiffs allege that it made efforts to secure such paper from various sources, but was unable to do so and in consequence plaintiffs were forced to suspend operation of

their studio for a period of 30 days, discontinue the services of valuable employees who could not thereafter be re-employed, make a trip to New York and incur the expense of long distance telephone calls, to plaintiffs' loss and damage in the sum of $3,000. Proof of these allegations was submitted, the defendant not denying its erroneous transmission of the telegram either by way of answer or proof, but alleging that the plaintiffs did not present to the defendant any claim in writing within 60 days after the filing of the message and that its damages were limited in any event by virtue of the fact of the unrepeated message rate that the telegram was transmitted at. It was conceded by plaintiffs' counsel that any liability of the defendant was limited to the sum of $500.00

Judge Holman thereafter filed an order in which he found that the evidence established that the improper transmission of the telegram by the defendant Company was the proximate cause of plaintiffs' undisputed actual damages of $648-.10 and that the damages suffered by plaintiffs was neither speculative nor special but general damages, readily capable of ascertainment and that they were adequately established by the business records of the plaintiffs. The Court thereupon ordered judgment for the plaintiffs in the sum of $500.00 with costs.

From the above order the defendant appeals on some twelve exceptions. The parties concede and the trial Court held that motions for nonsuit and directed verdict, and request for findings of fact and conclusions of law by the appellant properly raised before the trial Court the issues posed by the exceptions made on appeal.

In the view which this Court takes of the matter, it is unnecessary to consider any exceptions save those which raise the question as to the type of damages suffered by the plaintiffs and defendant's liability therefor.

Even though it be conceded that the damages suf-
fered were readily ascertainable, that they were not
speculative, and that they were adequately estab-
lished by the evidence, this Court cannot find itself in agree-
ment with the holdings of Judge Holman that the damages
were general. There is neither allegation nor proof that ap-
pellant had any reason to apprehend that its erroneous trans-
mission of the telegram would result in the suspension of
business by respondent and, in the absence of such allega-
tions and proof, it cannot fairly be said that such damages
are recoverable. General damages are such as might be rea-
sonably expected by the parties to flow from a breach of the
contract. We are not prepared to hold that the erroneous
transmission of a telegram such as that involved here would
reasonably result in the closing of plaintiffs' business or that
such a result was contemplated by either of the parties.

In accordance with the above, such exceptions of the ap-
pellant as raise the issue that plaintiffs were not entitled to
recover at the hands of the defendant damages of the nature
of those discussed herein are hereby sustained and the case
is remanded to the trial Court for disposition in accord-
ance herewith. The trial Court did not indicate what items
of damage were included in the award of $500.00, merely
stating that it found as a fact that although the undisputed
actual damages were $648.10, defendant's liability could
not exceed the stipulated maximum of $500.00.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUS-
TICES FISHBURNE and OXNER concur.

MR. ASSOCIATE JUSTICE OXNER (concurring) :

I concur in the opinion of Mr. Justice Taylor and de-
sire to add a few observations.

Although this action may be classified as one sounding
in tort, it is clear from all of our decisions involving breach
of duty by telegraph companies in the handling and dispatch
of telegrams, that the rule of damages in general tort actions

does not apply. In *Poteet v. Western Union Telegraph Co.,* 74 S. C., 491, 55 S. E., 113, 114, Mr. Justice Woods, after using the language which Mr. Justice Stukes has quoted in the third paragraph of his dissenting opinion, said: "In cases of this character the suit is usually for the tort committed in breach of the public duty owed to the plaintiff; but the duty springs out of the contract and depends on it." Later in the same opinion he said: "As to the subject-matter of a telegram it is too well established for discussion, before there can be a recovery, the telegraph company must have notice that the particular result alleged as the basis of the claim was to be apprehended from delay in transmission."

In *Towles & Arnett v. Atlantic Coast Line R. Co.,* 83 S. C., 501, 65 S. E., 638, Mr. Justice Gary said: "When parties enter into a contract, and there is a breach thereof, for which an action may be brought either *ex contractu* or *ex delicto,* the plaintiff must elect whether to sue upon the contract or for the tort, as he can only resort to one of said actions. But he cannot, by adopting a particular form of action, change the rights of the parties under the contract."

The evidence in this case conclusively shows that the damages complained of are not such as may reasonably be supposed to have been in the contemplation of the parties, but grew out of an unusual or peculiar state of facts, which cannot be said to have been known to appellant and which I do not think were even anticipated by respondents.

One of the respondents testified that when the telegram in controversy was sent, they had on hand 6 or 7 rolls of film and the other respondent testified that they had on hand 1 or 2 rolls. There was further testimony by respondents to the effect that the 10 rolls of film mentioned in the telegram would have supplied the needs of respondents for about two months. It follows that the respondents ordinarily carried in stock a supply which would only meet their needs

for a comparatively brief period. Respondents further testified that although they had been doing business with Marks & Fuller, Inc., for some time, they had never had any difficulty before in getting these rolls. The circumstance that Marks & Fuller, Inc., happened not to have this film on hand when the error in the transmission of the telegram was discovered was an unusual one which had never occurred before. After the respondent discovered that Marks & Fuller, Inc., was unable to supply this film, they were able to obtain one roll a week for a month from some concern in Atlanta, which, together with the stock on hand, enabled them to run their business until August 15, 1942, at which time they were compelled to close on account of lack of film. They state they were unable to get further film until about September 15, 1942, and as a result, they were compelled to close their business from August 15, 1942, to September 15, 1942. The trial Judge permitted recovery for the profits which they lost during this period of a month. It is reasonable to presume from the small stock of film carried by respondents that they did not anticipate any difficulty in supplying their needs from time to time.

If it be assumed that the circumstances were sufficient to charge appellant with notice that the telegram referred to film which was used in carrying on respondents' business, there are no circumstances tending to show that appellant should have known that respondents did not have on hand an ample supply of film to meet the ordinary contingencies, or should have known of the scarcity of film in the open market, which was the real cause of the respondents having to close their business.

In *Matheson v. Southern Railway*, 79 S. C., 155; 60 S. E., 437, plaintiff ordered two tons of guano which the carrier failed to deliver. Plaintiff claimed that he was unable to procure other guano after it became manifest that the shipment would not be delivered, causing the yield on his land to be far less than it would have been, had he been able to

use guano. In denying recovery, the Court said: "There is no foundation for special damages. The evidence discloses nothing more than an ordinary shipment of fertilizer, with no notice to the carrier at the time it received the goods of any special use to which it was to be applied, *or of such scarcity of fertilizer as to prevent the purchase of two tons of other guano by the plaintiff.*" (Emphasis mine.)

In *Kolb v. Southern Railway,* 81 S. C., 536, 62 S. E., 872, plaintiff ordered two gins, together with the necessary equipment, and certain parts of the machinery were broken in shipment. Plaintiff sought to recover damages against the carrier for loss of customers and profits alleged to have been sustained in the operation of a public gin, which he claimed resulted from the carrier's delay in transportation and the delay incident to replacing the broken parts. The Court denied recovery of the special damages, saying: "The general rule is that special damages for losses arising from failure to deliver goods within a reasonable time cannot be recovered except upon allegations and proof that defendant had notice of the special circumstances at the time of the shipment."

To the same general effect is the case of *Traywick v. Southern Railway,* 71 S. C., 82, 50 S. E., 549, 550, 110 Am. St. Rep., 563. The Court there, in stating the principles relating to the recovery of damages, quoted the following with approval: "First. That damages which may fairly and reasonably be considered as naturally arising from a breach of contract, according to the usual course of things, are always recoverable. Second. That damages which would not arise in the usual course of things from a breach of contract, but which do arise from circumstances peculiar to the special case, are not recoverable unless the special circumstances are known to the person who has broken the contract."

I think the foregoing cases are analogous in principle to the instant case and those referred to in the dissenting opin-

ion, in which recovery was allowed, are readily distinguishable.

MR. ASSOCIATE JUSTICE FISHBURNE concurs.

MR. ASSOCIATE JUSTICE STUKES (dissenting) :

I regret that I do not agree with the disposition of this appeal proposed in the opinion of Mr. Justice Taylor and I respectfully suggest that he has overlooked the fact that the action involves the admitted failure on the part of a public corporation, a common carrier, to comply with its contract to correctly transmit, after payment of its established charge, a message from one member of the public to another, for which delict plaintiffs brought their suit in tort for damages.

The suggested distinction between this case and one for the breach of an ordinary or private contract is referred to in the following language of Mr. Justice Woods in his opinion for this Court in *Webb v. Atlantic Coast Line Railroad*, 76 S. C., 193, 56 S. E., 954, 955, 9 L. R. A. (N. S.), 1218, 11 Ann. Cas., 834:

"Cases like this stand on a very different footing from ordinary actions against a party owing no duty to the public for damages for a tort founded on contract—such for example as an action of deceit. The defendant is a public service corporation. Those having baggage to transport have no choice, and must of necessity intrust it to a common carrier. The common carrier must take and transport it with reasonable dispatch, not only by reason of an express or implied contract to do so, but as a duty in the proper discharge of which the public is concerned."

The same learned Justice of this Court (who was afterward a distinguished member of the U. S. Circuit Court of Appeals) had previously said in the opinion of *Poteet v. Western Union Telegraph Company*, 74 S. C., 491, 55 S. E., 113, 114:

"The general distinction between contract and tort in this respect is thus well stated by Mr. Justice Jones, in *Hughes v. [Western Union] Tel. Co.,* 72 S. C., 516, 527, 52 S. E., 107, 111: 'In actions for damages for breach of contract, it is usual to say that compensatory damages may be recovered for such consequences as are within the contemplation of the parties to the contract at the time of contracting; but in an action in tort it is usual and proper to say that compensatory damages may be recovered for such consequences as naturally and proximately result from the negligence of performing a duty imposed by law.'" See, also, 15 Am. Jur., 405.

The case in hand is one at law and the factual findings implicit in the holdings of the trial Judge cannot be disturbed upon appeal if there was any evidence to sustain them. Furthermore, there was testimony that plaintiffs had before ordered photographic film by messages transmitted by defendant and I think it was reasonably inferable that defendant had knowledge of the nature of the order and the use of the material specified, and its essentiality to the conduct of the business of plaintiffs. Indeed, the very signature to the message was plainly indicative of plaintiffs' business, and their urgent need of the material ordered was similarly shown by its contents and the fact of its dispatch. A copy of the message was incorporated in the complaint; the correct original and the erroneous form delivered to the sendee were both introduced in evidence by the plaintiffs.

Again, language of Mr. Justice Woods may, I think, be aptly quoted:

"It is true there was no proof in this case of the custom, but the Court will take judicial notice of it. Courts do not require proof of the established business customs of the people whose affairs come before them; for, as has been well said, courts will not profess to be more ignorant than the

rest of mankind." *Fleischman Morris & Co. v. Southern Railway,* 76 S. C., 237, 56 S. E., 974, 975, 9 L. R. A. (N. S.), 519.

It seems to me plain common sense to hold that defendant was charged with knowledge, upon receipt of the message for transmission, that the plaintiffs, photographers, were in immediate need of indispensable material for the prosecution of their business and that failure to obtain it through negligence of the telegraph company would render them unable to continue their operations.

The case in respect to the damages claimed is of strong similarity to *Webb v. Railroad, supra,* where trunks containing the samples of a traveling salesman were negligently delayed in transit by the defendant carrier and a verdict for plaintiff was allowed to stand, despite appeal upon the point, in the rendition of which the jury were allowed to consider the profits or commissions which plaintiff lost as the result of the delay in the delivery of the trunks. It was said by the Court:

"Knowledge of the trunk being a salesman's trunk of samples taken with him on a business trip included knowledge that delay in its delivery would result in interruption of his business and loss of time and custom."

In the next volume of our reports is *Strange v. Atlantic Coast Line Railroad Co.,* 77 S. C., 182, 57 S. E., 724, 725, which presented a similar problem. Plaintiff's testimony that he ordinarily earned from twenty to twenty-five dollars per day and that he missed three days work from the delay in the delivery of his trunk, was allowed to stand, and the verdict which was affirmed undoubtedly chiefly consisted of this element of his damages. Upon this point the Court said:

"The damages proved by the plaintiff here were not based on particular sales the plaintiff hoped to make. His evidence

was properly directed to the fair average daily earnings in his business. This he testified was from $20 to $25 per day, and that the trunk was delayed three days. In addition to this, there was evidence of the expenditure of $8.30 in the effort to find the trunk. The judgment was for $65, and this was obviously well supported by the evidence above recited of items of damages flowing naturally and proximately from the interruption of plaintiff's business, consequent on the delay of his trunk of samples."

Further quotations from the latter authority, *Strange v. Atlantic Coast Line Railroad Co.*, are appropriate, as follows:

"There was error in receiving plaintiff's testimony as to a conversation with defendant's agent after the loss of the trunks, in which he gave notice of his business as a traveling salesman. Special damages for losses arising from failure to deliver goods cannot be recovered, unless the defendant has notice of the special circumstances at the time of shipment. (Citations of authorities omitted.) But this error was immaterial, as plaintiff testified defendant's agent, who received the trunks, had frequently checked them for him, and knew the kind of business in which he was engaged, and this evidence was not disputed.

"The main contention of the defendant is that the magistrate erred in admitting evidence of the interruption of the plaintiff's business by reason of the failure of the defendant to deliver promptly at Manning the trunk containing his samples. As we have seen, there was evidence that the defendant, when the trunks were received, knew the business of the plaintiff was to sell goods by sample as a traveling salesman, and this was notice that delay of his samples would probably result in an interruption of his business and loss of time. When the carrier accepts goods for transportation, with notice that the owner requires them at the place to which they are to be carried for a special business purpose,

the measure of damages for delay in carriage is the expense and detriment to the special business with reference to which the carriage was undertaken fairly attributable to the delay, including expense and loss of time reasonably incurred in the effort to find the delayed property. This does not include the speculative profits resting on the mere hope of particular future transactions." (Citations omitted.)

In the trial of the instant case the defendant offered no evidence, did not attempt to prove that it did not know plaintiffs' business and the necessity thereto of the material ordered, at the time of the filing of the message; so plaintiffs' evidence tending to show such, the message itself and plaintiffs' prior practice in telegraphing similar orders, was not disputed, as was likewise said in the last cited case.

Fitting are the words of this Court in *Carter v. Western Union Tel. Co.*, 73 S. C., 430, 53 S. E., 539, 540:

"The face of the telegram and the allegations of the complaint show that such results (there mental suffering, here ascertainable money damages-interpolated) might naturally and reasonably have been expected from the failure to deliver the message."

I see no difference between the allowance of damages for the interruption of a traveling salesman's business and his reasonably ascertainable loss therefrom and the similar loss from the interruption of the business of photographers. Why should the former be allowed and the latter denied? There is no logical distinction because the first resulted from delay in the transportation of trunks and the other from error in the transmission of a message, granting that the carrier knew or ought to have known of the importance of its undertaking and the probable results of its failure. And the latter condition was, I think, met in this case, as has been pointed out.

A fairly late case in this Court is *Diamond v. Southeastern Express Co.*, 131 S. C., 452, 128 S. E., 417, 419, which, I

think, negatives appellant's theory that damages for interruption of business are not properly recoverable in this action because they are special. There the defendant carrier negligently delayed delivery of a motion picture film and it was held that damages accruing to plaintiff from his inability to exhibit the picture in accord with his advertisement of it were neither speculative nor special and were recoverable in tort. In the several concurring opinions there were cited some of the authorities referred to above, and numerous others. No subsequent contrary decision of this Court has been found.

Acting Associate Justice Thurmond said in part in his concurring opinion, as follows:

"In *Givens v. [North Augusta] Electric [& Improvement] Co.,* 91 S. C. [417], 421, 74 S. E. [1067] 1069, it was held that whether special damages 'were in the contemplation of both parties to the contract, and whether they contracted with reference thereto,' is 'ordinarily a question of fact for the jury, unless the evidence is susceptible of only one reasonable inference, and then it is for the Court. The rule as to the recovery of special damages for breach of contract is stated in the leading case of *Hadley v. Baxendale,* 9 Exch., 353: ''Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, *i. e.,* according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it.'' ' "

And Acting Associate Justice Miller the following:

"I do not think the damages recovered are either speculative or special, but only such as, in the circumstances disclosed by the record, were in the contemplation of the parties.

A carrier must be held to know facts familiar to ordinary people. Appellant must have known that plaintiff would sustain precisely the damages proven in this case; the loss sustained was the natural and necessary result of its failure promptly to carry and deliver the picture. The principle involved is concluded by *Lester v. Fox Film Corporation,* 114 S. C., 533, 104 S. E., 178.

"But if the damages allowed be regarded as special, the judgment must be sustained. Plaintiff was engaged in a standard business, the character of which defendant well knew; the course of dealing between the parties had been such as to advertise the defendant thereof; there was nothing in relation to the matter of which the defendant could have been notified, which it did not already know.

"Elliott (4 Elliott on Railroads, § 1731) thus states the rule:

" 'It is well settled that special or peculiar damages claimed to have resulted from the carrier's delay cannot be recovered unless the carrier has notice before or at the time of accepting the goods of the special circumstances, rendering prompt transportation necessary, *or at least ought to know of the same.'* (Italics mine.)

"The italicized words clearly show that when the carrier knew, or ought to have known of the special circumstances rendering prompt transportation necessary, the requirement as to notice is fulfilled."

This Court held in *Mood v. Western Union Telegraph Company,* 40 S. C., 524, 19 S. E., 67, that in the absence of allegation of notice to defendant of the damages which might accrue to the addressee of the message in case of failure to deliver, the latter, a doctor, could not recover for the anticipated fee which he was unable to earn. But the decision was modified, in effect overruled in this respect, by the subsequent case of *Simkins v. Western Union Telegraph Co.,* 97 S. C., 413, 81 S. E., 657, and the opinion is strikingly ap-

plicable to the case at bar. Simkins was an attorney and a telegram was sent to him by an intended client directing him to represent the sender professionally at a certain hearing in Columbia, but delay in delivery of the message prevented plaintiff from accepting the employment and earning a fee. The very clear opinion of the Court, by Mr. Justice Hydrick, stated that the question was whether the recovery of the alleged special damages was permissible in the absence of an allegation in the complaint that the defendant knew, when the contract of transmission was made, the special circumstances out of which such damages might result if the telegram were not promptly delivered. It was said by the Court that if the complaint alleged knowledge of facts and circum-. stances from which a person of ordinary intelligence and prudence should know that such damages would result from delay in delivery, it was sufficient, for facts are well pleaded which may by reasonable intendment, be inferred from the facts and circumstances directly alleged, and further, quoting: "Therefore, in determining the sufficiency of the allegations of the complaint in which the telegram is set out in full, we may consider the information which the telegram itself afforded, when read in the light of the attendant circumstances known to defendant, and also alleged in the complaint." Then there were reviewed allegations of the complaint in that action which are quite analogous to those of the complaint in the instant case, together with a copy of the telegram as here, and it was added that defendant's contention that the complaint lacked direct allegation of notice to the defendant was technical rather than substantial, and further that the defendant may not complain of plaintiff's pleading wherein the evidence to prove the fact of notice is set out instead of the bare allegation of notice, because there was no resulting prejudice. Tested by these principles, it seems to me that the allegations and evidence of the plaintiffs in this action were entirely sufficient to entitle them to

the recovery of their damages for interruption of their business, subject of course to the limit of liability prescribed by the contract of transmission, which limit, $500, appellants successfully invoked in the lower Court.

It seems to me that it would be entirely unjust to hold in this case, particularly in the absence of any effort by appellant to support the conclusion by evidence, that the telegraph company was not put on notice by the filing, contents and signature of the message of the proximate results of any failure to properly transmit it. And this is without regard to the former sending by plaintiffs of telegraphic orders for film, of which there was testimony. Furthermore, I think there must not be overlooked the fact observed by Mr. Justice Cothran in the case next cited (147 S. C. at page 432, 145 S. E. at page 296), as follows: "A telegram means urgent business, and its handling should be commensurate with this acknowledged fact."

In the case just referred to, *Freeman v. Western Union Telegraph Co.,* 147 S. C., 423, 145 S. E., 294, this Court sustained a verdict for the plaintiff in the sum of four hundred dollars in an unanimous opinion by the very able Justice Cothran. In the report, which includes the comprehensive order of Special Circuit Judge Calhoun Mays in addition to the opinion of the Court by Mr. Justice Cothran, no evidence appears of notice to the defendant at the time of the filing of the message at its Blowing Rock, North Carolina, office of the damages which might and did accrue from its non-delivery except the contents of the message itself. It was liberally construed by the Court to be an offer of summer employment to plaintiff who was a musician at Clemson College (whence the message was directed), unemployed during the college vacation period. This Court referred to Special Judge Mays' order refusing a new trial as a clear expression of the law of the case and adopted it as the Court's own conclusion. In this Circuit Court order the

former decision in *Simkins v. Western Union Telegraph Co., supra,* was cited with approval and quotation from it was made as has been done above.

Damages were allowed Freeman for his loss of remunerative employment resulting from the negligence of defendant in failing to properly deliver the message, just as, I think, plaintiffs in this action should be compensated for loss resulting from the interruption of their business which was proximately caused by the failure of defendant to correctly transmit the message here involved. Again, I see no difference.

The holdings of other pertinent South Carolina decisions will be found in 31 S. E. Dig., Telegraphs and Telephones, beginning at page 504, but time will not be taken for review of any of them except that which appears to be the latest, *Cullen v. Western Union Telegraph Co.,* 188 S. C., 480, 199 S. E., 702, opinion by the late, lamented Justice Bonham (afterward Chief Justice). There plaintiff was sent a telegram at Beaufort by his attorney in Martinsville, Virginia, directing him to appear for a Court trial on November 3rd (apparently 1937). Upon receipt the message read November 30th, by which error plaintiff failed to appear for the trial of the case and it was dismissed to his loss; he sued for the resulting damages. The defendant followed its course in this case and offered no testimony but moved for nonsuit upon the grounds that there was neither allegation nor proof that defendant had notice or knowledge that the failure to deliver the message correctly would cause special damages, and that the damages demanded were remote and speculative and not the proximate consequences of the failure to correctly transmit the message. The case was heard by a magistrate without a jury, as here by the county Judge similarly without a jury. Judgment was awarded plaintiff and appeal was made to the Circuit Court and, upon adverse judgment there, to this Court upon the grounds stated. The

appeal was dismissed and the judgment affirmed, this Court commenting that the magistrate was acting as Judge and jury, and the evidence justified his action. Nothing in the report of the decision indicates any notice to defendant of the importance of the message other than its contents.

I think the abundance of authority found in the decisions of this Court applicable to the point at issue makes unnecessary investigation of the law of other jurisdictions, but the texts indicate that it is the same. The following is quoted from 26 R. C. L., 602:

"It may be stated as a general rule that a telegraph company is liable for such actual damages as naturally and proximately result from its negligent failure to recover or transmit and deliver a message correctly and without unreasonable delay."

And the following is the most of Section 102, 26 R. C. L., 605:

"On the question as to what form of words, in messages other than cipher messages, is sufficient to apprise the company of the importance of the message, the cases are not in harmony, but there is an evident tendency on the part of the Courts to adopt the principle that it is sufficient to render the company liable for actual damages if the message shows on its face that it relates to a business transaction, and that loss will probably result unless it is promptly and correctly transmitted, and that it is not necessary that the company should be apprised of the exact amount of loss likely to result from its default. So it has been held that the question whether telegraphic dispatches are sufficient to inform the operator of their meaning, and of the possible risk of loss by mistake, is not to be determined solely by the dispatches themselves, but all the facts and circumstances, including previous messages sent by the operator for the same person, may be considered."

The following is from 62 C. J., 201:

"If plaintiff seeks to increase his measure of damages by proof that at the time the message was accepted by the com-

pany the latter had notice from some source other than the language of the message itself of its importance and of the consequences which would result from a failure duly to deliver it, he must allege such special notice; *but it is not necessary to allege such notice where the complaint sets out the message and the language of the message is sufficient to charge the company with notice of its urgency and importance.*" (Emphasis added.)

And the following is from 62 C. J., 219, 220:

"It may be a question for the jury whether defendant had notice of the nature and importance of the message so as to justify a recovery of special damages, or whether the message itself was sufficient to charge the company with such notice, but where its character and importance clearly appear on the face of the message, the Court may so hold, as a matter of law, and refuse to submit the question of notice to the jury."

In considering the applicability of the foregoing textual statements it should be borne in mind that the facts involved in the present action and necessarily included in the judgment of the lower Court have already been resolved against appellant who consented to the trial of the case by the Judge of the Court without the aid of a jury, and offered no evidence in its behalf. The facts so found are, of course, as binding upon this Court as if determined by the verdict of a jury.

Upon the point discussed, and upon which it is proposed to reverse the judgment, appellant cites two decisions of the Supreme Court of the United States, in line with its contention that the Federal law is applicable because the erroneous message was transmitted in interstate commerce (as were those in the two most recent decisions of this Court referred to above, to wit, *Freeman v. Western Union Telegraph Co., supra,* and *Cullen v. Western Union Telegraph Co.,* also *supra*).

The first of such decisions is *Western Union Tel. Co. v. Hall,* 124 U. S., 444, 8 S. Ct., 577, 580, 31 L. Ed., 479. In that case there was delay in the transmission of a purchase order and the property sought increased in value on the next day and there the testimony ended. That the case is utterly inapplicable to the facts of this is shown by the following quotation from the opinion of the Court: "It is clear that in point of fact the plaintiff has not suffered any actual loss. No transaction was in fact made, and there being neither a purchase nor a sale, there was no actual difference between the sums paid and the sums received in consequence of it which could be set down in a profit and loss account. All that can be said to have been lost was the opportunity of buying on November 9th, and of making a profit by selling on the 10th, the sale on that day being purely contingent, without anything in the case to show that it was even probable or intended, much less that it would certainly have taken place."

In contrast, the Court cited with apparent approval and distinguished numerous decisions of other Courts wherein verdicts were sustained where real losses to plaintiff were proven to have proximately resulted from the mistakes of the telegraph company (as here), all of which authorities closely tend to sustain the verdict in this case. In economy of space and time they will not be further discussed.

The other case from the highest Court of the land cited by appellant is *Primrose v. Western Union Telegraph Company,* 154 U. S., 1, 14 S. Ct., 1098, 1108, 38 L. Ed., 883. Necessary differentiation of that decision from this case is easily shown by the head notes or syllabi of the report (154 U. S., 1) wherein the decision is summarized under two heads: First that the contract stipulation for a limit of liability of the telegraph company in the case of an unrepeated message is reasonable and valid; at that time such provision was for a maximum equal to the charge for transmission; now it appears to be $500, for which limit appellant successfully contended in the lower Court and, accordingly, the

judgment against it is for substantially less than the actual damages proven; the other proposition held by the Court in the *Primrose case* was, broadly, that the company was not liable for more than the charge for transmission for error in communicating the contents of a cipher message, which of course is not at all involved in the instant case. The following is quoted from the opinion of the Court:

"In the present case the message was, and was evidently intended to be, wholly unintelligible to the telegraph company or its agents. They were not informed, by the message or otherwise, of the nature, importance, or extent of the transaction to which it related, or of the position which the plaintiff would probably occupy if the message were correctly transmitted."

The complaint will be reported. Its allegations were supported by respondents' evidence; appellant offered none.

I think the trial Judge was fully warranted in his following quoted findings, a portion of his order for judgment:

"The Court has given careful consideration to the evidence and the arguments of counsel. It is undisputed that the telegram, as filed by plaintiffs, was incorrectly and erroneously transmitted by the defendant. The evidence established that such negligence of the defendant telegraph company was the proximate cause of plaintiffs' undisputed actual damages of $648.10. However, it is conceded by counsel for the plaintiffs that as the message involved was an unrepeated telegram, the defendant's liability to plaintiffs cannot exceed the stipulated maximum of $500.00.

"The Court is satisfied, upon reviewing the evidence, that the damages suffered by the plaintiffs are neither speculative nor special but general damages readily capable of ascertainment and were adequately established by the business records of the plaintiffs introduced in evidence."

It seems to me that there is an easily recognizable fallacy in appellant's argument that the damages proved in this case

by respondents were special and therefore not recoverable. It leaves no room for the existence of general damages, apparently reducing the classification to nominal damages (liability for which it impliedly admits, for its negligence is confessed) and unrecoverable special damages. The face of the message gave notice of the business transaction involved and the nature of that business, and this was not the first such transaction by Western Union, so it was reasonably held, certainly in the absence of contradiction on the part of appellant, that the nature of the business and of this transaction was known to appellant, so that it was liable for the natural and proximate results of its negligence which I think may be accurately called general damages.

If respondents had claimed some unusual use for the film not ordinary in the business, such for instance as that they had orders for photographs, for which the film was necessary, of great or unusual profit to them, such contended damages would undoubtedly be special; or if the film ordered could not have been replaced for a year, or ever replaced, such damages as resulted from that unusual circumstance would possibly be special and not recoverable in the absence of a corresponding special notice to appellant of the unusual importance of the apparently usual business telegram. But these supposed facts and none like them are presented; there was an ordinary telegraph order for material used in the business of plaintiffs and appellant's error, due apparently to respondents diligent and partly successful efforts to obtain the material elsewhere and alleviate their loss, resulted in the interruption of usual business for only one month, and even then respondents are not made whole by the judgment, the latter because of the contract limitation upon the liability of appellant because it was not paid an extra charge for repeating the message.

Upon the subject of the nature of the damages and their recoverability, see the interesting discussion in 15 Am. Jur.,

Damages, pages 398 *et seq.* Support is there found for the views which I have endeavored to express.

I conclude from all of the foregoing that if any difference between the damages recoverable in an action in tort (which this is) and one in contract, first alluded to above, be ignored, still the respondents are entitled under the pleading and trial of this case to the judgment awarded them because the damages were general and such as are ordinarily allowable in an action for breach of contract. And even if it were erroneously (as I see it) conceded that the damages were special, they would yet be recoverable for appellant had ample notice that they would probably ensue upon its delict (as was said by Acting Associate Justice Miller in *Diamond v. Southeastern Express Co., supra*) and such notice was sufficiently alleged in the complaint and established by the evidence.

Let the Complaint be reported.

The complaint follows:

The plaintiffs, herein, complaining of the defendant above named, respectfully show unto the Court:

1. That, at the times hereinafter mentioned, plaintiffs were, and are now, engaged as co-partners under the firm name and style of Hollywood Studio, in the maintenance and operation of a photographic studio in the City of Columbia, county and State aforesaid.

2. On information and belief, that at the times hereinafter mentioned, the defendant was, and now is, a foreign corporation, existing under and by virtue of the laws of one of the states of the United States other than South Carolina, owning and operating a public line of telegraph between Columbia, South Carolina, and Rochester, New York, and held itself out to the public to be, and in fact was, a common carrier of telegraphic messages for hire between the said places above named; that it maintains offices and agents in the City of Columbia, county and State aforesaid.

3. That plaintiffs, on July 7, 1942, found it necessary to replenish its then almost depleted stock of photographic film (size 3¼ × 250′), and thereupon wrote and delivered to the Columbia office of the defendant, Western Union Telegraph Company, the following telegraphic message, addressed to Marks & Fuller, Inc., 44 East Avenue, Rochester, N. Y., which message was, in words and figures, as follows:

"Western Union ·

"Columbia, S. C.
"July 7, 1942

"Marks & Fuller, Inc.
"44 East Ave.
"Rochester, N. Y.

"Send us ten rolls 3¼ × 250 ft direct positive paper.

"Hollywood Studio
"1208 Main St.
"Columbia, S. C."

and then and there paid to the defendant Telegraph Company the sum of Eighty-eight ($0.88) cents, which was the charge demanded by said defendant for the transmission of such message; that the defendant Telegraph Company, in consideration of the sum so paid by plaintiffs, agreed to promptly and accurately transmit and forward such message to Marks & Fuller, Inc., of Rochester, N. Y., distributors of films and photographic supplies.

4. That, in utter disregard and in violation of its duty to the plaintiffs and in breach of its contract and agreement to accurately transmit and deliver the above-quoted telegram to the said Marks & Fuller, Inc., of Rochester, N. Y., the defendant, Western Union Telegraph Company, through its negligence and carelessness, erroneously transmitted and delivered to Marks & Fuller, Inc., of Rochester, N. Y., the following message:

"Western Union

"NAF79 17 5 Extra *Columbia So Car 7 301P

"1942 July 7 PM 3 42

"Marks & Fuller, Inc.,

"44 East Ave. Rochester NY

   "Send us ten rolls 3½ × 250 Ft Direct Positive Paper.

                       "Hollywood Studio

                       "1208 Main St

                       "Columbia SC"

5. That upon receipt of such erroneous telegram, Marks & Fuller, Inc., in compliance with the apparent instructions of the plaintiffs herein (resulting from the negligent erroneous transmission of said telegram by the defendant), immediately shipped to plaintiffs, at Columbia, S. C., ten (10) rolls of film, three and one-half (3½") inches in width. That upon receipt of such shipment of 3½" films, plaintiffs immediately returned the same to Marks & Fuller, Inc., of Rochester, N. Y., with advices that plaintiffs' telegraphic order was for ten rolls of 3¼" film and not ten rolls of 3½" film, as delivered; that the photographic equipment of plaintiffs could accommodate films of but 3¼" in width, and, hence, the films of width 3½" could not be used by plaintiffs. Thereupon, plaintiffs were informed by Marks & Fuller, Inc., of Rochester, N. Y., that whereas on July 7, 1942, they had in stock and could have furnished plaintiffs with films of 3¼" width had plaintiffs' telegraphic order been correctly transmitted by the defendant Western Union Telegraph Company, they were then (on or about July 22, 1942), unable to secure 3¼" width film from manufacturer, and, accordingly, could not then deliver the same to plaintiffs.

6. That as above set forth, the negligent and erroneous acts of the defendant, Western Union Telegraph Company, in wrongfully inserting in the delivered telegram 3½" width films for 3¼" width films, contrary to the message agreed

to be transmitted and delivered by defendant to Marks & Fuller, Inc., prevented the plaintiffs herein from securing such films indispensable in the operation of their business and, as a direct and proximate consequence thereof, plaintiffs were forced to shut down and suspend operations and to discontinue their studio for a period of thirty (30) days, all to their great loss and damage hereinbelow set forth.

7. Plaintiffs further show unto the Court that immediately upon their realization of the dilemma in which their business had been placed through the negligence of the defendant, Western Union Telegraph Company, and faced with the urgent necessity of securing such $3\frac{1}{4}''$ films elsewhere, in an effort to forestall the closing of their business, and to mitigate their damages, did immediately, by long distance telephone, communicate with photographic supply distributors in Atlanta, Ga., Memphis, Tenn., and New York, N. Y., in a fruitless effort to then secure such supplies, thereby incurring telephone bills and travel expenses of Mr. Einbinder to New York to its loss and damage. Failing to thereby secure such $3\frac{1}{4}''$ films, plaintiffs were compelled to shut down their business, discontinue the services of valuable employees who could not subsequently be re-employed, and suspend operations for a period of thirty days until such film was then obtained and operations resumed, all to their loss and damage, in the interim, in the sum of Three Thousand ($3,000.00) Dollars.

8. That as a result of the above alleged negligence of the defendant, Western Union Telegraph Company, said defendant is indebted to plaintiffs in the sum of Three Thousand ($3,000.00) Dollars.

Wherefore, plaintiffs pray judgment in the sum of Three Thousand ($3,000.00) Dollars and for the costs of this action.