[No. 29508. Department Two. April 17, 1945.]

ROBERT M. JONES, *Appellant,* v. NORTHWEST AIRLINES, INC., *Respondent.*[1]

[1]Reported in 157 P. (2d) 728.

*Rummens & Griffin,* for appellant.

*Karr, Karr & Tuttle,* for respondent.

MALLERY, J.—Plaintiff brought an action for damages against the defendant for a breach of contract of carriage by air. From a judgment in favor of the defendant, the plaintiff appeals.

Before the appellant purchased a round trip ticket to Washington, D. C., he explained to respondent's ticket agent that he had a limited time in which he could make the trip. The ticket agent informed him about weather conditions and suggested that he try to make the trip. The appellant testified that he was told to stay with the plane and he would get through all right. The ticket had printed on its face: "Sold subject to tariff regulations."

Respondent's plane, carrying the appellant, left Seattle on the evening of May 28, 1942. At that time, the respondent was operating two flights daily between Seattle and Chicago. Appellant's reservations were on the plane designated by the schedule as "flight 6."

At Helena, Montana, that flight was canceled due to weather conditions. The appellant was taken by train to Billings by the respondent, who offered appellant the next available reservation on an eastbound flight, which was "flight 2" on June 1st. This offer was rejected by appellant. Respondent then offered appellant rail transportation to Chicago, where an eastbound plane was available to Washington, D. C. This offer was also rejected by appellant. Appellant testified that he thus explained his position to the respondent:

"That, of course, would not get me east in time to get back. . . . So I explained to them that that was not satisfactory and told him [respondent's agent, Shultz] what arrangement I had with them. But this gentleman, Mr. Shultz, as I recall, stated that all business flying east the planes were contracted to full capacity for at least two days further, and after that he did not know, it was solid up to that time."

Appellant thereupon returned to Seattle by train.

■ Appellant contends that respondent breached its contract of carrying by its conduct because, knowing that appellant's time was limited, it undertook to carry him by air and sold him a round trip ticket on that basis of time limitation. The gist of appellant's complaint is that, while respondent had other planes and used them for other passengers over the same route, it refused appellant the use of any of these planes. His contention is, in effect, that he had a right to continue on the next plane even though it was full to capacity and it would have been necessary to cancel someone's reservation in order to secure the needed space. He contends he had this right by reason of his having a special contract in which his limited time had been provided for.

With this we do not agree. His ticket was sold subject to tariff regulations with which he was charged with notice. The general rule is that specific contracts inconsistent with the terms of tariff schedules are void. 9 Am. Jur. 531. At page 533 of the same authority, it is said:

"By virtue of the express provisions of the Interstate Commerce Act and of similar provisions in state statutes, tariffs and tariff regulations, once established, cannot be deviated from until changed in the manner provided by law, and all charges provided for therein must be exacted. To shut out opportunity for discrimination and favoritism, neither the carrier nor the patron is permitted, by any act of his, to release the other from any liability imposed by such tariffs."

The respondent's authority for the cancellation of appellant's flight is found in paragraph 4 of the tariff regulations in effect at that time. It provides:

"I. A participating carrier may cancel any flight at point of origin or at any other point and may omit any scheduled stop at any time it deems such action advisable or necessary.

"II. Participating carriers will not be responsible for failure of aircraft to depart or arrive on scheduled time."

It is the established practice of the respondent and others in the same business to follow the course taken in the instant case.

The tariff regulations under which appellant purchased the ticket were available for his inspection at respondent's

ticket office. In buying this ticket, appellant bought it subject to the regulations. Respondent could not sell it on any other basis without violating the law, for § 483 of the civil aeronautics act, 49 U. S. C. A. (1944 Sup.) 208, requires the filing of these rules and regulations and forbids a carrier from departing therefrom.

The question presented here is whether passengers on the flights then scheduled shall be displaced and the equipment used to accommodate those such as appellant, who have been interrupted in their trips, or whether those who have been delayed must wait for the first available seats if they are to continue by air. Upon the question of what rule should be followed with regard to priorities of reservations, the respondent contends in support of its practice that obviously of the two alternatives the latter inconveniences the least number of the traveling public. The former throws every passenger off schedule for so long a period as is necessary to absorb the number of delayed passengers with space not reserved.

A great deal can undoubtedly be said on the other side of this question on appellant's behalf, however. If there be a question of this practice being wrongful, it should be settled by the civil aeronautics board, which exists for the very purpose of deciding such a matter.

In *Adler v. Chicago & Southern Air Lines,* 41 F. Supp. 366, it was held that no suit could be instituted for discriminatory action or unreasonable practices until the civil aeronautics board had determined that the practice was unreasonable or discriminatory. The court said:

"It is apparent that the practice of the defendant of cancelling scheduled flights is a 'practice' within the meaning of the Civil Aeronautics Act. . . . It follows that the reasonableness or lawfulness of such practice can only be determined by the Civil Aeronautics Board, and this court is without jurisdiction to grant any relief to the plaintiff in the absence of a finding by that board that the practice complained of is unlawful or unreasonable, and until the plaintiff is able to allege in a complaint that he has exhausted all of his remedies before that board."

Where, however, the carrier has breached its contract of carriage by violating its own or interstate commerce commission rates, rules, regulations, or procedures, it is not necessary to refer the matter to the interstate commerce commission, because there is no technical fact to be determined. In such cases, the passenger may bring his action in either state or Federal court, without original submission to the interstate commerce commission.

The appellant submitted his case to the trial court upon the theory that respondent had violated a regulation which was a part of the contract and that, therefore, the court had jurisdiction to determine the matter. He did not contend that his action was predicated upon the unreasonableness of some regulation, in which event the matter would have had to be determined by the civil aeronautics board before the court would have acquired jurisdiction.

The trial court found that the respondent had not breached its contract or violated any regulation that was binding upon it. This we affirm. Where a party attempts to show unreasonableness of a regulation, such as here involved, he must do so before the civil aeronautics board rather than one of the state courts, because otherwise uniformity of practices would be impossible.

The judgment is affirmed.

BEALS, C. J., BLAKE, ROBINSON, and SIMPSON, JJ., concur.