## MACK v. EASTERN AIR LINES, Inc.

### Civ. No. 7941.

United States District Court
D. Massachusetts.

June 2, 1949.

Chester W. Mack, Boston, Mass., Lambert H. Bigelow, Boston, Mass., for plaintiff.

Warren F. Farr, Ropes, Gray, Best, Coolidge & Rugg, Boston, Mass., for defendant.

114

WYZANSKI, District Judge.

This is an action by a passenger on defendant's air line bound from Boston to Washington, D. C. for damages because of defendant's failure to transport him beyond New York. Defendant has moved for summary judgment under the provisions of Federal Rules of Civil Procedure, rule 56(b), 28 U.S.C.A.

By the pleadings, admissions of plaintiff on file and affidavits attached to defendant's motion it appears that there is no dispute as to the following facts. Plaintiff purchased a ticket from Boston to Washington, D. C. for passage on Flight No. 633 on August 27, 1947. That flight was scheduled to leave Boston at 4:00 p. m. for Jacksonville and Miami, Florida, with scheduled stops at LaGuardia Field, New York at 5:05 p. m. and at Washington, D. C. at 6:37 p. m. Plaintiff was a passenger on that flight. The flight did not leave Boston until 5:34 p. m. and arrived at LaGuardia Field, New York at 6:35 p. m.

At 6:00 p. m. while Flight No. 633 was in the air en route to New York, the Washington Air Route Traffic Control Center, a facility of the Civil Aeronautics Administration, issued an order stopping air traffic into Washington, D. C. until further notice due to emergency conditions. Upon the arrival of Flight No. 633 at LaGuardia Field defendant's Flight Superintendent ordered the flight to omit its scheduled stop at Washington, D. C. because of this indefinite suspension of traffic into the Washington airport. All passengers bound for Washington, D. C., including plaintiff, were requested to deplane and did so. Flight No. 633 departed from LaGuardia Field for Jacksonville at 7:13 p.m. Plaintiff refused a refund of the one-way fare from New York to Washington, D. C. and demanded that defendant pay him $30.80, being the amount of the full fare from Boston to Washington, D. C. plus hotel and telephone expenses.

Thereafter he brought this suit in which he set forth three causes of action: Count 1, in tort, alleging that defendant negligently failed to apprise him that the flight to Washington might not be completed and that defendant negligently failed to carry him beyond New York; Count 2, in tort, alleging that defendant negligently refused to complete the air passage to Washington, D. C.; and Count 3, in contract, alleging breach of contract to carry plaintiff to Washington, D. C.

At the argument on the motion for summary judgment filed by defendant, plaintiff said he was prepared to show first, that the defendant did not act reasonably in that it failed to inform plaintiff in Boston of the weather conditions and likelihood of no stop in Washington, D. C.; second, that defendant acted unreasonably in New York in requiring Washington passengers to deplane at LaGuardia Field. Plaintiff also stated that he was prepared to show that within an hour after the plane left LaGuardia Field weather conditions in Washington, D. C. were excellent and it would have been practicable for the defendant to have carried him from LaGuardia Field to Washington, D. C. virtually as scheduled.

It takes no extended discussion to show that defendant is entitled to the summary judgment for which it asks and that plaintiff's contentions are entirely devoid of merit.

Section 403 of the Civil Aeronautics Act of 1938, 49 U.S.C.A. § 483, provides for the filing, posting and publishing of tariffs by air carriers and requires that contracts of carriage shall correspond to such tariffs. Pursuant to that provision of law defendant before August 27, 1947 filed, posted and published Local and Joint Passenger Rules Tariff No. PR–2. Paragraph 2(A) of these Rules Tariff provided that the Rules contained therein "shall constitute the terms and conditions upon which each participating carrier furnishes, or agrees to furnish, transportation at such fares and charges, to the same extent as if such Rules were included as terms and conditions in the contract of carriage and expressly agreed to by the passengers". Rule 11(A) and (B) of the Rules Tariff provided:

"(A) Liability of participating carriers.

Except to the extent provided in paragraphs (B) and (C) of this Rule, no par-

ticipating carrier shall be liable for failing to operate any flight according to schedule or for changing the schedule of any flight, with or without notice to the passenger.

"(B) Options of passengers and carriers —General.

Except as provided in paragraph (C) of this Rule, whenever any participating carrier fails to operate any flight according to schedule, or changes the schedule of any flight, or cancels the reservation of any passenger pursuant to Rule 13(A), said carrier will, at the request of the passenger,—

(1) Transport the passenger on the next flight on which space is available;

(2) Endorse the unused portion of his ticket for purposes of rerouting;

(3) Refund an amount determined in accordance with Rule 15(a) upon surrender of the unused portion of his ticket * * *

(4) If the carrier so elects, reroute the passenger, or secure for him accommodations by other means of transportation." Paragraph (C) of the Rule deals with the options of passengers and carriers when the passenger misses a connecting flight on which space has been reserved, and is inapplicable to the present case. Rule 14 of the Rules Tariff provided in its pertinent parts as follows:

"(A) General. Each participating carrier reserves the right to refuse to transport, or to remove at any point, any passenger—

(1) Whenever such action is necessary to comply with any governmental regulation, or whenever it deems such action necessary or advisable by reason of weather or other conditions beyond its control;
* * * * * *

"(E) Liability. No participating carrier shall be liable for its refusal to transport any passenger in accordance with the preceding paragraphs of this Rule, or for its removal of any passenger in accordance with paragraph (A) or (B) of this Rule, but such carrier will, at the request of the passenger and upon surrender of the unused portion of his ticket, refund an amount determined in accordance with Rule 15(a)." Rule 15 of the Rules Tariff provided:

"(A) Involuntary. The amount of the refund which any participating carrier will make, pursuant to Rule 11(B) (3), 11(C) (3), or 14(E) will be—
* * * * * *

(2) If a portion of the ticket has been used, either—

(a) An amount equal to the one way fare and charges applicable to the transportation covered by the unused portion of the ticket, less the same rate of discount that was applied in computing the original cost of the ticket; or

(b) If the flight on which the passenger was being transported was terminated at a point not on the routing designated by the passenger's ticket" [various other amounts].

 There can be no question that these Rules were within the authority conferred by the Civil Aeronautics Act of 1938 and became a part of the contract between the carrier and the passenger. Boston & Maine Railroad v. Hooker, 233 U.S. 97, 34 S.Ct. 526, 58 L.Ed. 868, L.R.A.1915B, 450, Ann.Cas.1915D, 593; Western Union Telegraph Co. v. Esteve Brothers & Co., 256 U.S. 566, 571, 573, 41 S.Ct. 584, 65 L.Ed. 1094. There is nothing in Section 1106 of the Civil Aeronautics Act of 1938, 49 U.S. C.A. § 676, which is to the contrary. That section merely provides that *remedies* now existing at common law or by some other statute are not abrogated by the Civil Aeronautics Act of 1938, 49 U.S.C.A. § 401 et seq. What it preserves are pre-existing remedies, not pre-existing obligations or rights or contractual arrangements. Contractual arrangements and obligations are governed by the Civil Aeronautics Act and not by common law or some other statute. If Schwartzman v. United Air Lines Transport Corp., D.C.Neb., 6 F.R.D. 517, is to the contrary, I decline to follow it.

 Inasmuch as the Rules 11, 14 and 15 of the Rules Tariff were incorporated in the contract between plaintiff and defendant, there can be no question that plaintiff is bound by the conditions specified therein. Jones v. Northwest Airlines, Inc., 22 Wash.2d 863, 157 P.2d 728; Boston & Maine Railroad v. Hooker, supra; Western

Union Telegraph Co. **v.** Esteve Brothers & ·Co., supra.

Under Rule 11(A) defendant had the right to change the schedule of Flight No. 633 without previous notice to plaintiff. Also under Rule 14 defendant had the right to remove plaintiff at LaGuardia Field because it determined such action advisable because of weather or other conditions beyond its control.

· It is entirely irrelevant as a matter of law that defendant did not inform plaintiff in Boston of the weather, that defendant removed plaintiff from the plane in New York and that the weather in Washington was in fact excellent an hour after plaintiff left the plane in New York. Since all these facts are irrelevant as a matter of law, there is no genuine issue as to any material fact and defendant as the moving party is entitled to a judgment as a matter of law. F.R.C.P. Rule 56(c), as amended.

Judgment for defendant with costs.