### LOYAL FUR MFG. CO., Inc. v. UNITED STATES.

United States District Court
S. D. New York.
Nov. 19, 1949.

Lampke & Stein, New York City (William L. Darrow, New York City, of counsel), proctors for libelant.

John F. X. McGohey, New York City (William H. Postner, New York City, of counsel), proctor for respondent.

**S. H. KAUFMAN, District Judge.**

This libel is brought to recover on a policy of cargo war risk insurance issued by the War Shipping Administration pursuant to Title 46, U.S.C.A. §§ 1128–1128h.[1] At the trial, the parties stipulated in writing as to the facts. Upon the stipulation, the following findings and conclusions are made.

### Findings of Fact

1. At all times herein material, libelant was a Pennsylvania corporation having an office and place of business within the Southern District of New York.

2. At all times herein material, libelant was the owner of 5,040 shearlings.

3. On or about May 29, 1942, respondent, acting through the War Shipping Administration, issued to libelant a policy of cargo war risk insurance, No. C–2617, covering said shearlings as well as others, for a premium of $720.

4. The policy contained the following warranty by libelant: "Warranted goods shipped or in transit on or before June 27, 1942."

5. The shearlings were loaded on board the SS Star of Oregon, an overseas vessel, on or about July 31, 1942 at Durban, South Africa. The SS Star of Oregon had arrived at Durban on July 26, 1942 and sailed from there on August 2, 1942.

6. On or about August 5, 1942, libelant requested an extension of transit warranty for an additional thirty days.

7. On or about August 7, 1942, respondent re-established the transit warranty, at no additional premium, from August 7, 1942 to September 6, 1942, but specified that "if cargo shipped and sailed between July 28 and August 6 no coverage whatsoever exists under this policy." On August 10, 1942 the policy was amended by an endorsement as follows:

"It is understood and agreed that the transit warranty on the policy to which this endorsement is attached is extended from August 7 to September 6, at no additional premium.

"If cargo shipped and sailed between July 28 and August 6, no coverage existed under this policy."

8. The date "July 28" in the endorsement was erroneously inserted in place of "June 28".

9. Between August 2, 1942 and August 30, 1942, the SS Star of Oregon did not call on any port or ports. On August 30, 1942 the SS Star of Oregon was sunk at sea by enemy action and the shearlings were a total loss. Losses through enemy action are within the type of coverage provided in policy No. C–2617.

10. All information concerning the sailing date of the vessel and cargo was classified by respondent. Neither libelant nor the Insurance Division of the War Shipping Administration had any personal knowledge, at the time of the extension of warranty, of such sailing date.

11. On or about September 22, 1942 respondent notified libelant of the loss of cargo. On or about October 8, 1942 libelant presented a notice of claim under policy No. C–2617. Respondent rejected said claim on or about May 8, 1943.

12. Thereafter libelant requested respondent to reconsider the claim on proper documents and on or about July 1, 1944 respondent again rejected the claim.

13. The libel was filed in this court on July 10, 1945.

### Discussion

■ The transit warranty was express. Libelant failed to comply with that warranty. Under these circumstances, the pol-

---

1. Sections 1128–1128e and sections 1128f–1128h have since been repealed, 61 Stat. 449.

icy is avoided. Aetna Ins. Co. v. Houston Oil & Transport Co., 5 Cir., 49 F.2d 121, certiorari denied 284 U.S. 628, 52 S.Ct. 12, 76 L.Ed. 535; Levine v. Aetna Ins. Co., 2 Cir., 139 F.2d 217; Shamrock Towing Co. v. American Ins. Co., 2 Cir., 9 F.2d 57; see 2 Arnould, Marine Insurance (12 Ed.), §§ 632–635.

Libelant contends, however, that its breach of warranty has been waived, on the ground that respondent, with knowledge of the sailing date, extended the transit warranty from August 7 to September 6, retained the premium, and failed to notify libelant during the three week period the ship was at sea.

Although the Insurance Division of the War Shipping Administration was without personal knowledge of the date of sailing, libelant urges that the Division is charged with notice because a sub-agent of the War Shipping Administration signed the bill of lading in Durban, South Africa. The Court is also asked to take judicial cognizance of the fact that the United States was in control of the port of Durban and thus in its governmental capacity knew the date of sailing.

 The functions and duties of the War Shipping Administration comprised various and divergent activities.[2] These included in part control over the operation, purchase, charter, requisition and use of all ocean vessels as well as the duty to provide war risk insurance and reinsurance. The magnitude of the task required that these functions be carried out under separate directors.[3] Under these circumstances, there is no warrant for imputing the knowledge which one or more divisions of the War Shipping Administration may have acquired, to another carrying out a separate and distinct function. In any event, there is nothing in this record to show that the War Shipping Administration, its directors or agents, or the United States in its sovereign capacity, at the time in question, knew or could have known that this particular shipment was covered by

the particular policy upon which recovery is sought.

 Respondent is also entitled to a dismissal of the libel on the ground that it is barred by the limitations set forth in the statute.

Section 1128d of Title 46, U.S.C.A., provides in part:

"In the event of disagreement as to a claim for losses or the amount thereof, on account of insurance under sections 1128-1128h of this title, an action on the claim may be brought * * *. Said suits shall proceed and shall be heard and determined according to the provisions of sections 741-752 of this title insofar as such provisions are not inapplicable and are not contrary to or inconsistent with the provisions of sections 1128-1128h of this title."

Section 745 provides that suits shall be brought within two years after the cause of action arises. Under these provisions it would seem that the cause of action arose at the time of disagreement for no suit is authorized prior thereto. Respondent first rejected this claim on May 8, 1943; and the libel was not filed until July 10, 1945. The rejection as of that date was clear and unequivocal. That there was enclosed in the letter of rejection improper documents and that the claim was again rejected on July 1, 1944, after libelant requested reconsideration, is immaterial. Filing the libel within "the prescribed period is a condition precedent to recovery, and the cause of action is extinguished after the running of the period." Osbourne v. United States, 2 Cir., 164 F.2d 767, 768 ; Sgambati v. United States, 2 Cir., 172 F.2d 297, 298, certiorari denied 337 U.S. 938, 69 S.Ct. 1514.

Libelant not being entitled to recover, a decree must be "entered in favor of respondent dismissing the libel" in accordance with the stipulation of the parties.

Conclusions of Law

1. This court has jurisdiction of the parties and the subject matter of this action.

2. See Executive Order No. 9054, February 7, 1942, 7 F.R. 837, 50 U.S.C.A.Appendix, § 1295 note.

3. See United States Government Manual (Fall 1942), pp. 100–102.

2. Libelant committed a breach of warranty, since the goods were shipped at a time other than that warranted by libelant. No coverage existed under this policy at the time the goods were shipped and sailed.

3. Respondent did not waive libelant's breach.

4. The libel is barred since not brought within two years after the cause of action arose.

5. Respondent is entitled to a decree dismissing the libel.