Philip WITTENBERG, Plaintiff,

v.

EASTERN AIR LINES, Inc., Defendant.

Civ. A. No. 4290.

United States District Court
E. D. South Carolina,
Columbia Division.

Dec. 7, 1954.

Philip Wittenberg, Columbia, S. C., for plaintiff.

Robinson, Robinson & Dreher, R. Hoke Robinson, Columbia, S. C., for defendant.

WYCHE, District Judge.

This matter is before me upon the motion of the defendant air line for summary judgment pursuant to Rule 56, Fed. Rules Civ.Proc., 28 U.S.C.A., on the ground that there is no genuine issue as to any material fact and defendant is entitled to judgment as a matter of law. The motion is based on the pleadings, the deposition of the plaintiff, the plaintiff's ticket, Rule 11 of the defendant's Passenger Rules Tariff, and an affidavit setting out the contract provisions of the ticket which defendant issued to the plaintiff.

The gist of the complaint is that the defendant, through its agents at the Akron-Canton, Ohio, airport and at the Cleveland airport promised plaintiff that his flight from Cleveland to Charlotte would connect with defendant's Charlotte-Columbia flight and that the latter flight would be held for him if necessary. He alleges that he sustained actual and punitive damages occasioned by defendant's failure to make connection, which made it necessary for him to obtain ground transportation to Columbia and caused him to join his parents there on Mother's Day several hours later than he had expected. The defendant denied the allegation of damage, set up the applicable Passenger Rules Tariff as a bar and pled that no agent or employee had authority to waive or modify the same. It alleged that the complaint failed to state facts justifying any relief.

On this motion the Court has considered the facts in the light most favorable to the plaintiff. Thus considered, the story developed by the pleadings, deposition and exhibits is as follows:

The plaintiff bought a round trip ticket from Columbia to Akron-Canton

on May 6, 1954, leaving Columbia on Friday, May 7th, and intending to return on Monday, May 10th. He departed Friday evening and arrived at his destination on Saturday, May 8th. His business was concluded Saturday evening, sooner than originally expected. He succeeded in obtaining space via United Air Lines to Cleveland on Sunday morning, and on Eastern's flight No. 701 to Charlotte, to connect with Eastern's flight No. 753, scheduled to depart from Charlotte at 11:55 A.M. and to arrive in Columbia at 12:43 P.M.

According to the plaintiff, he was assured by defendant's agents in Cleveland that the connection at Charlotte would be made, even if the departure of flight No. 753 had to be delayed in Charlotte until the arrival of flight No. 701. His flight out of Cleveland was more than an hour late in leaving that city, and when it reached Charlotte at 12:25 P.M., flight No. 753 had departed for Columbia some ten minutes earlier.

Thereupon, plaintiff demanded of the defendant's agent immediate transportation to Columbia by taxi. Defendant's Charlotte agent offered him space on the next flight, leaving about 8:00 P.M., but this was not satisfactory to the plaintiff. He offered him a ticket refund of $6.82, but withdrew the offer when the plaintiff refused to sign an unconditional acceptance. The defendant offered taxi fare to the bus station, which the plaintiff accepted. He took a bus to Columbia, arriving there about 5:30 P.M., Sunday, and spent the rest of the evening with his parents, with whom he resides.

Plaintiff had made other air trips from Columbia to Akron-Canton and was generally familiar with schedules between these points.

The defendant relies on Rule 11 of its Passenger Rules Tariff No. PR–3, on file with the Civil Aeronautics Board. Under it defendant is not liable for "failing to operate any flight according to schedule or for changing the schedule of any flight, with or without notice to the passenger," except that in such case the carrier may be required, at the request of the passenger, to transport him on another flight or to refund the unused fare. In the present case defendant offered to do either of these, but neither was accepted by the plaintiff.

The ticket which plaintiff purchased in Columbia contained the following statement in bold type: "Sold Subject To Tariff Regulations Issued By Eastern Air Lines." The ticket also contained ten "Conditions of Contract" printed thereon. Condition seven states that schedules are subject to change without notice and that the carrier assumes no responsibility for making connections. Condition ten provides that no agent, servant or representative of the carrier has authority to alter, modify or waive any provision of the contract. Any promises or assurances on the part of the defendant, not consistent with Rule 11 or the contract conditions, would be of no effect.

The general rule as to the liability of an air carrier under its contract of carriage is stated in 6 Am.Jur., Aviation, Sec. 49, as follows:

"A specific contract for transportation which is inconsistent with the provisions of the carrier's tariff schedule filed pursuant to the provisions of the Civil Aeronautics Act [49 U.S.C.A. § 401 et seq.] is invalid and unenforceable."

Cases upholding similar Rules Tariffs against attacks such as this are Mack v. Eastern Air Lines, D.C.Mass.1949, 87 F.Supp. 113; Jones v. Northwest Airlines, Inc., 22 Wash.2d 863, 157 P.2d 728; Furrow & Co. v. American Airlines, D.C. Okl.1952, 102 F.Supp. 808; Lichten v. Eastern Air Lines, Inc., 2 Cir., 1951, 189 F.2d 939, 25 A.L.R.2d 1337.

The plaintiff seeks to avoid the effect of these cases by arguing that he has alleged a tort on the part of defendant, and therefore the tariffs and contract conditions are not applicable. But under the facts plaintiff has established no tortious conduct on the part of defendant. In this area of flight schedules, connections, etc., the defendant's duties are

set out in its published Tariffs and contract conditions, and it is not derelict in its duty to a passenger unless it violates one of these rules or some regulation of the Civil Aeronautics Board, the air regulatory authority established by Congress.

In support of his position plaintiff cited some early railroad cases holding that misinformation supplied to the traveling public by a carrier's agent or employee was actionable. General statements to this effect are found in 10 Am.Jur., Carriers, Sec. 1088, but the genesis for these statements is found in an annotation in 8 A.L.R. 1183 entitled "Liability of Carrier for giving misinformation to passenger as to running of train." All of the cited cases have to do with railroads, none is later than 1916, and they concern passengers being put on the wrong train, being wrongfully ejected, sustaining physical injuries, etc. The reasoning of these cases is inapplicable since the plaintiff was not put on the wrong plane, nor was he ejected in any manner.

Schwartzman v. United Air Lines, D.C.Neb.1947, 6 F.R.D. 517, is distinguishable on its facts. There the petition alleged that defendant had sold plaintiff a ticket, assigned him space on a particular flight, and then wrongfully and without warrant refused to honor its commitment. The Court refused a motion to dismiss for failure to state a claim upon which relief could be granted, holding that plaintiff could conceivably, within the scope of the petition, adduce proof establishing a cause of action. It should be noted that in the Mack case, supra, Judge Wyzanski stated that if the Schwartzman case was contrary to his holding there, he declined to follow it.

I conclude that under the facts of this case the provisions of the cited Passenger Rules Tariff are a complete bar to the prosecution of plaintiff's action, and defendant is entitled to prevail on its motion for summary judgment. Defendant has offered to refund plaintiff the sum of $6.82, representing the unused portion of his ticket, and plaintiff should be paid this amount.

It is therefore ordered that the defendant refund to the plaintiff the sum of $6.82, and that judgment be entered for the defendant. Each party shall bear his or its own costs.