**Alvin TRAMMELL, Plaintiff,**

v.

**EASTERN AIR LINES, a corp., Defendant.**

**Civ. A. No. 1514.**

United States District Court
W. D. South Carolina,
Greenville Division.

Sept. 13, 1955.

Brown & Aiken, J. Wiley Brown, Greenville, S. C., for plaintiff.

Wyche, Burgess & Wyche, Greenville, S. C., for defendant.

TIMMERMAN, District Judge.

This matter came before me for hearing on March 10, 1955, upon motion of the defendant, Eastern Air Lines, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., on the ground that there is no genuine issue as to any material fact and defendant is entitled to judgment as a matter of law. In the alternative, the defendant prays for judgment for plaintiff in the sum of $25,88, representing the purchase price of a ticket purchased by plaintiff from defendant for transpor-

tation from Charlotte, North Carolina to Detroit, Michigan.

The motion is based on the pleadings, the affidavits of W. A. Weeks, M. M. Frost, Fred C. Rumler, Henry S. McConnell and Thomas Ratchford, the "Conditions of Contract" attached to plaintiff's ticket, and Rule 11, Local and Joint Passenger Rules Tariff No. PR-3 on file with the Civil Aeronautics Board as provided under Section 483, Title 49, U.S.C.A.

The plaintiff also made a motion for an order of voluntary dismissal.

The gist of the complaint is that on May 27, 1953, plaintiff purchased a ticket from the defendant for air transportation from Charlotte, North Carolina to Detroit, Michigan on Flight No. 714W, scheduled to leave Charlotte, North Carolina at 3:20 A.M. on June 1, 1953. He alleges that he sustained actual damages in the sum of $3,301.76, occasioned by the defendant's failure to permit him to board Flight No. 714W on the morning of June 1, 1953.

The complaint alleges in substance that the plaintiff was going to Detroit to purchase at 10:00 o'clock A.M. on Monday, June 1, 1953 sixteen automobiles which he was going to sell in Greenville, South Carolina at a profit of $200 each and that after being denied transportation on Flight No. 714W he, by long distance telephone, unsuccessfully attempted to change the time of the transaction in order to "save himself considerable money" and that as a result of defendant's failure to transport him he has suffered actual damages in the sum of $3,301.76.

The defendant denied the allegations of damages and set up the applicable Passenger Rules Tariff and Conditions of Contract as a bar to recovery. It alleged that the plaintiff failed to reconfirm his reservation at least six hours before the scheduled departure of Flight No. 714W and that the defendant, under the tariff regulations and contract provisions sold said reservation to another passenger.

The defendant stated in its motion that it would be based upon the pleadings, certain attached affidavits, and the deposi-

tion of the plaintiff. In this connection, the record shows that the defendant served notice of taking of plaintiff's deposition on October 16, 1953, and obtained an order for extension of time to answer until a date subsequent to the taking of said deposition. Plaintiff did not appear for the taking of said deposition in response to the notice and subpoena *duces tecum* served upon him. After receipt of said notice, counsel for plaintiff served upon counsel for defendant notice of motion for a voluntary nonsuit without prejudice. The matter came before the Court at the October, 1954 term of Court, sitting at Greenville, South Carolina, at which time the Court deferred action on both motions until the plaintiff could be orally examined by counsel for the defendant pursuant to the notice and subpoena *duces tecum* theretofore served. Counsel for plaintiff was advised to make him available for examination at the earliest convenience. The record reveals that although counsel for defendant has diligently sought the examination of plaintiff by deposition, he has not made himself available for that purpose; nor has he filed any affidavits in opposition to the motion for summary judgment. It is a reasonable assumption that the purpose of the motion for voluntary nonsuit without prejudice was (1) to prevent the oral examination of the plaintiff; and (2) to permit counsel to reduce the claimed damages to a figure below the jurisdictional amount and bring a new action in the State Court which could not be removed to the Federal Court and which would thereby deprive the defendant of the liberal discovery provisions available under the Federal Rules of Civil Procedure. Counsel for plaintiff very frankly admitted in the oral arguments before me that this is what they intended if the Court permitted plaintiff to take a voluntary nonsuit without prejudice.

On this motion, the Court has considered the facts in a light most favorable to the plaintiff. Thus considered, the facts developed by the pleadings, affidavits and exhibits are as follows:

The plaintiff on May 27, 1953 bought a ticket, No. 0718–961853 from the defendant for transportation from Charlotte, North Carolina to Detroit, Michigan, on Flight No. 714W, which was scheduled to leave Charlotte, North Carolina at 3:20 A.M. on June 1, 1953. The plaintiff contemplated purchasing automobiles in Detroit for resale at a profit of "approximately $200.00 each" in Greenville, South Carolina. There is nothing in the pleadings, affidavits or exhibits to indicate that such an intention or purpose was expressed to the defendant.

When plaintiff checked his ticket with the defendant's agent in Charlotte, North Carolina, defendant discovered from the records that plaintiff had not reconfirmed his reservation before flight time and that his space had been resold to another passenger. To permit plaintiff to board the plane under these circumstances would have resulted in its being overloaded in violation of the Rules and Regulations of the Civil Aeronautics Board. Plaintiff was given a standby slip to permit him to board the flight in case some other passenger failed to claim his seat just before take-off time. Plaintiff was also tendered transportation on Flight No. 752, which was scheduled to leave Charlotte Airport for Detroit at 7:45 A. M. that morning. Plaintiff did not return to check with the defendant either as to boarding Flight No. 714W or Flight No. 752. Defendant tendered back to plaintiff the purchase price of his ticket, $25.88, which he has refused to accept.

The defendant relies on Rule 13(b) (2) of its Passenger Rules Tariff No. PR–3 on file with the Civil Aeronautics Board. In accordance with Rule 44 of the Federal Rules of Civil Procedure, a certified copy of this Rule, in force on May 27, 1953 and June 1, 1953, was filed with the Court as basis for this Motion. It provides in the material part as follows:

"13. Cancellation of Reservations,

\*   \*   \*   \*   \*   \*

"(B) Failure to Reconfirm Reservations.

\* \* \* \* \* \*

"(2) Each participating carrier (except CPA, TCA and WCA) will cancel the reservation of any passenger on a flight operated by it:

"(a) From the point of origin named on his ticket or exchange order if not issued at such point, \* \* \* unless the passenger communicates with a reservations or ticket officer of the carrier at such point for reconfirmation of the reservation at least six hours before the scheduled departure of the flight."

The ticket which plaintiff purchased contained the following statement in bold type "Sold Subject To Tariff Regulations Issued By Eastern Air Lines." Among said tariff regulations issued by the defendant and in force at the time in question was the above Rule 13. The filing of these tariffs with the Civil Aeronautics Board is required under the provisions of Section 483 of Title 49, U.S.C.A. The ticket which plaintiff purchased also contained ten "Conditions of Contract" printed thereon. Condition 6 is set forth in plaintiff's complaint and relied upon by him as a part of his cause of action. Condition 7 reads as follows:

"(7) Times shown in timetables or elsewhere are approximate and not guaranteed, and form no part of this contract. Schedules are subject to change without notice. Carrier assumes no responsibility for making connections. Carrier may without notice substitute alternate carriers or aircraft and, if it deems advisable because of any fact beyond its control, cancel, terminate, divert, postpone or delay any flight or the further right of passage or reservation of traffic accommodations, and determine if any departure or landing should be made, without any liability except to refund in accordance with its tariffs the fare and baggage charge for any unused portion of the ticket. If question arises of any aircraft's being overloaded, Carrier shall decide in its reasonable discretion which passengers or articles shall be carried."

I. Defendant's Liability for Plaintiff's Alleged Special Damages,

Before considering the question of defendant's applicable tariffs on file with the Civil Aeronautics Board and the "Conditions of Contract" printed on plaintiff's ticket, the Court will first dispose of the question of plaintiff's alleged damages. The point is made that based on the allegations of the complaint, plaintiff is not entitled to recover against the defendant any amount other than the sum of $25.88, representing the unused portion of plaintiff's ticket, upon the ground that the other damages are what is termed in the law as special damages, of which there is no allegation or evidence of notice to the defendant when the contract was made.

The complaint does not allege facts, sufficient to bring plaintiff's claimed special damages to the knowledge of the defendant at the time the ticket was purchased or the flight was to be made. There is considerable authority to the effect that the defendant is not liable for such special damages under such circumstances. See Einbinder v. Western Union Telegraph Co., 205 S.C. 15, 30 S.E.2d 765, 154 A.L.R. 704; Milhous v. Atlantic Coast Line R. R. Co., 75 S.C. 351, 55 S.E. 764; Towles & Arnett v. Atlantic Coast Line R. R. Co., 83 S.C. 501, 65 S.E. 638.

In the Einbinder case, supra, the Court in 205 S.C. at page 19, 30 S.E.2d at page 767 says:

"Even though it be conceded that the damages suffered were readily ascertainable, that they were not speculative, and that they were adequately established by the evidence, this Court cannot find itself in agreement with the holdings of Judge Holman that the damages were general. There is neither allegation nor proof that appellant had any reason to apprehend that its erroneous transmission of the telegram would result in the suspension

of business by respondent and, in the absence of such allegations and proof, it cannot fairly be said that such damages are recoverable. General damages are such as might be reasonably expected by the parties to flow from a breach of the contract. We are not prepared to hold that the erroneous transmission of a telegram such as that involved here would reasonably result in the closing of plaintiffs' business or that such a result was contemplated by either of the parties."

In the Milhous case, supra, relating to the liability of the railroad for failure to carry baggage, the Court says in 75 S.C. at page 354, 55 S.E. at page 765:

"The claim for damages rests upon the special circumstances which rendered the use of the tools valuable to plaintiff, and falls within the class of special damages. This court has, in several cases recently, considered the subject of special damages, and the rule is settled that, in order to recover such damages, the plaintiff must allege and prove notice to the carrier of the special circumstances. Traywick v. Southern Ry., 71 S.C. 85, 50 S.E. 549; Wesner & White [Mfg. Co.] v. Atlantic Coast Line Ry., 71 S.C. 211, 50 S.E. 789; Guess & Glover v. Southern Ry., 73 S.C. 264, 53 S.E. [421] 423; Wehman v. Southern Ry., 74 S.C. 286, 54 S.E. 360. As there was no allegation or proof of such notice to the carrier, it is clear that the plaintiff was not entitled to recover such special damages."

In the Towles & Arnett case, supra, the Court at page 502 of 83 S.C. at page 638 of 65 S.E., says:

"The rule is well settled that notice at the time of the contract of circumstances from which special damages may reasonably be expected to result will make the defendant liable for such damages on the ground that they were within the contemplation of the parties, and

therefore are regarded as forming a part of the contract.

"Special damages cannot be recovered in an action *ex contractu* unless the defendant had notice of the circumstances from which they might reasonably be expected to result at the time the parties entered into the contract as the effect of allowing such damages would be to add to the terms of the contract another element of damages not contemplated by the parties. And, when the plaintiff waives the right to sue upon the contract, and brings an action *ex delicto*, special damages, for a similar reason, are not recoverable. When parties enter into a contract, and there is a breach thereof, for which an action may be brought either *ex contractu* or *ex delicto*, the plaintiff must elect whether to sue upon the contract or for the tort, as he can only resort to one of said actions. But he cannot, by adopting a particular form of action, change the rights of the parties under the contract."

The case of Smith v. Jasper County Board of Education, 227 S.C. 46, 86 S.E. 2d 738, 739, presented a suit for damages for alleged breach of contract to provide transportation of school pupils. Evidence was admitted of the claimed sacrifice sale by plaintiff of her bus when defendant terminated the contract, although there was no allegation or proof that such loss was in the contemplation of the parties when the contract was made. The Court, speaking through Mr. Justice Stukes, says:

"That it [the bus] had to be sold to pay the mortgage on it cannot be said to have been within the contemplation of the contracting parties. *At best, that was special damages of which there was no allegation or evidence of notice to appellant when the contract was made.* Towles & Arnett v. Atlantic C. L. R. R. Co., 83 S.C. 501, 65 S.E. 638. Cf. Givens v. North Augusta Electric [& Improvement] Co., 91 S.C. 417, 74 S.E.

1067, and earlier cases there cited. It follows that the loss in the sale of the bus cannot be considered to be an element of damage which flowed from the breach of the contract, and is not recoverable." (Emphasis added.)

■ Although in the instant case plaintiff has alleged certain special damages, there is no allegation or evidence of notice to the defendant when the contract was made.

## II. Defendant's Liability under Applicable Tariff Regulations and the "Conditions of Contract"

Under Condition 7 of the "Conditions of Contract" printed on plaintiff's ticket, schedules are subject to change by the defendant without notice and defendant had the right to postpone or delay plaintiff's right of passage without liability except to refund the cost of plaintiff's ticket. Also, under this condition, when the question of defendant's plane being overloaded arose by reason of the failure of the plaintiff to reconfirm his reservation, defendant had the right to decide in its reasonable discretion which passengers should be carried. There is nothing in the record before me to indicate that the defendant's agent exercised his discretion unreasonably under the circumstances.

The general rule as to the liability of an air carrier under its contract of carriage is stated in 6 American Jurisprudence—Aviation, Section 49, as follows:

*"Contract of Carriage and Performance Thereof.*

"A specific contract for transportation which is inconsistent with the provisions of the carrier's tariff schedule filed pursuant to the provisions of the Civil Aeronautics Act is invalid and unenforceable.

"A common carrier by air is not liable in damages for its failure to complete a specific contract for transportation made subject to its tariff regulations filed pursuant to the Civil Aeronautics Act where it

has proceeded in accordance with such regulations and the established practices of itself and other air carriers in similar cases. Thus, a carrier cannot be held liable for its failure to complete the contract for transportation within a specified time, due to the necessity for the cancellation of a flight on account of unfavorable weather conditions, where the contract of carriage was subject to the carrier's published tariff regulations, on the ground of the refusal of the carrier to give the plaintiff priority over other passengers holding reservations, where the carrier's practice in this regard has not been declared unreasonable by the Civil Aeronautics Board."

Cases upholding similar rules tariffs against attacks such as made in the present case are Mack v. Eastern Air Lines, D.C.Mass.1949, 87 F.Supp. 113; Jones v. Northwest Airlines, Inc., 22 Wash.2d 863, 157 P.2d 728; Furrow & Co. v. American Airlines, D.C.Okl.1952, 102 F. Supp. 808; Lichten v. Eastern Air Lines, Inc., 2 Cir., 1951, 189 F.2d 939, 25 A.L.R. 2d 1337; Wittenberg v. Eastern Air Lines, Inc., D.C.E.D.S.C., 126 F.Supp. 459, Order of U. S. District Judge C. C. Wyche, dated December 7, 1954 granting motion for summary judgment under facts and circumstances similar in a number of respects to the instant case.

In the interest of safety to the flying public, the Rules and Regulations of the Civil Aeronautics Board do not permit a plane to be overloaded or an airline to sell standing room. On the flight in question, a crew of five and sixty passengers were the load limit. Had plaintiff been permitted to board Flight No. 714W, defendant would have been guilty of an infraction of these Rules and would have endangered the life and safety of its other passengers.

The facts in the case of Mack v. Eastern Air Lines, D.C.Mass.1949, 87 F.Supp. 113, are very close to those in the instant case. There the plaintiff purchased a ticket from Boston to Washington on a flight with stops in New York, Washing-

ton and Jacksonville en route to Miami. The flight was an hour and a half late out of Boston and while en route to New York the Washington Air Route Control Center issued an order stopping traffic into Washington until further notice, due to an emergency weather condition. When the flight reached New York, defendant's agent there ordered it to omit the Washington stop and had the Washington passengers deplaned. Plaintiff refused refund of the fare from New York to Washington and demanded refund of the full fare, plus hotel and telephone expenses. In his suit, he set out three causes of action, two in tort for negligently failing to apprise him that the flight might not be completed and failure and negligence and refusal to carry him beyond New York, and one in contract for breach of contract to carry him to Washington. District Judge Wyzanski granted defendant's motion for summary judgment holding that the applicable Rules Tariff became a part of the contract between the carrier and passenger and that the plaintiff was bound by the conditions specified thereon. The Court cited Boston & Maine Railroad v. Hooker, 233 U.S. 97, 34 S.Ct. 526, 58 L.Ed. 868; Western Union Telegraph Co. v. Esteve Brothers & Co., 256 U.S. 566, 41 S.Ct. 584, 65 L.Ed. 1094; and Jones v. Northwest Airlines, Inc., 22 Wash.2d 863, 157 P.2d 728, as authority for the two propositions laid down. The opinion concluded [87 F.Supp. 116]:

"It is entirely irrelevant as a matter of law that defendant did not inform plaintiff in Boston of the weather, that defendant removed plaintiff from the plane in New York and that the weather in Washington was in fact excellent an hour after plaintiff left the plane in New York. Since all these facts are irrelevant as a matter of law, there is no genuine issue as to any material fact and defendant as the moving party is entitled to a judgment as a matter of law. F.R.C.P. Rule 56(c), as amended."

In Furrow & Co. v. American Airlines, D.C.Okl.1952, 102 F.Supp. 808, 809, a wholesale florist sought damages from an air carrier for failure to deliver a shipment of flowers within a reasonable time. The carrier defended on the basis of an Air Freight Rules Tariff under which it assumed " 'no obligation to commence or complete transportation within a certain time or according to any specific schedule, or to make connections with any other carrier, and no carrier shall be held liable for failure to do so or for error in any statement of time of arrival or departure.' "

Judgment was entered for the defendant on the basis of the tariffs, the Court holding that they established the legal relationships of the parties, irrespective of the injured party's actual knowledge of the tariff provisions. The Court also held that under the so-called "primary jurisdiction" rule, an attack on the reasonableness of any filed tariff must be made to the Civil Aeronautics Board in the first instance.

Lichten v. Eastern Air Lines, Inc., 2 Cir., 1951, 189 F.2d 939, was an action for loss of jewelry contained in a bag checked with defendant. The District Court granted defendant's motion for summary judgment and the Court of Appeals affirmed, holding that where the tariff rules of defendant provided it should not be liable for loss of jewelry, these rules became a part of the contract between the parties and plaintiff was not entitled to recover. The Court also held that any attack on the tariffs themselves must first be made to the administrative agency; that the reasonableness of a rule could be raised in Court only after exhaustion of administrative remedies.

Jones v. Northwest Airlines, 1945, 22 Wash.2d 863, 157 P.2d 728. The plaintiff there purchased a round trip ticket to Washington, D. C. from Seattle, Washington explaining to defendant's agent that he had a limited time to make the trip. He stated he was told to stay with the plane and he would get through all right. The ticket had printed on its

face: " 'Sold subject to tariff regulations.' " The flight was cancelled at Helena, Montana due to weather conditions. Plaintiff was offered the next available reservation east, which was about two days later. He refused that and refused rail transport to Chicago, where a plane was available to Washington. He returned to Seattle and brought suit for breach of contract of carriage by air.

The Washington Supreme Court affirmed the finding of the trial court that the airline had not breached its contract or violated any regulation that was binding on it, stating that the reasonableness of the published tariff was a matter for the Civil Aeronautics Board, not the State courts. The Court also said:

"His ticket was sold subject to tariff regulations with which he was charged with notice. The general rule is that specific contracts inconsistent with the terms of tariff schedules are void. 9 Am.Jur. 531. At page 533 of the same authority, it is said:

" 'By virtue of the express provisions of the Interstate Commerce Act and of similar provisions in state statutes, tariffs and tariff regulations, once established, cannot be deviated from until changed in the manner provided by law, and all charges provided for therein must be exacted. To shut out opportunity for discrimination and favoritism, neither the carrier nor the patron is permitted, by any act of his, to release the other from any liability imposed by such tariffs.' "

The facts in the case of Wittenberg v. Eastern Air Lines, Inc., U. S. District Court for the Eastern District of South Carolina, Columbia Division, are perhaps closer on the facts than any of those previously cited. The plaintiff purchased at Akron-Canton, Ohio, a round trip ticket to Columbia, South Carolina and return. He stated that he was promised that his flight from Cleveland to Charlotte, North

Carolina would connect with the defendant's Charlotte-Columbia Flight No. 753 and that said flight would be delayed in Charlotte until the arrival of his plane from Cleveland. His flight from Cleveland was late and when it reached Charlotte, Flight No. 753 had already departed for Columbia. Thereupon, plaintiff demanded transportation to Columbia by taxi, which was refused. Defendant's Charlotte agent offered him space on the next flight, which was not satisfactory. Defendant also offered refund of the unused portion of plaintiff's ticket. The ticket in that case had printed on its face, "Sold subject to Tariff Regulations issued by Eastern Air Lines" and it also had attached certain Conditions of Contract which are identical with those in the instant case.

District Judge C. C. Wyche granted defendant's motion for summary judgment upon the ground that the provisions of the cited Passenger Rules Tariff were a complete bar to the prosecution of the plaintiff's action.

The Court is impelled to the conclusion that under the facts of this case, the provisions of Rule 13 of defendant's Passenger Rules Tariff No. PR–3 on file with the Civil Aeronautics Board and Condition No. 7 of the "Conditions of Contract" attached to and forming a part of plaintiff's ticket, defendant is not liable for cancellation of plaintiff's reservation except to refund the fare charged for plaintiff's unused ticket.

III. Plaintiff's Motion for a Voluntary Order of Dismissal

The next matter for consideration is plaintiff's motion for a voluntary order of dismissal. His right thereto is governed by Rule 41(a) (2) of the Federal Rules of Civil Procedure which reads as follows:

"(2) By Order of Court. Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and con-

ditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon him of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice."

Prior to the adoption of the Federal Rules of Civil Procedure, the Federal Court following the prevailing rule in South Carolina was liberal in granting plaintiff the right to a voluntary dismissal at his option. See the decisions of this court in conformity with the prevailing rule in South Carolina: Prudential Ins. Co. of America v. Stack, 4 Cir., 60 F.2d 830; New York Life Ins. Co. v. Driggs, 4 Cir., 72 F.2d 833; Aetna Life Ins. Co. of Hartford, Conn. v. Wilson, 4 Cir., 84 F.2d 330; Pilot Life Ins. Co. v. Habis, 4 Cir., 90 F.2d 842, 843.

Since the adoption of the Rules, the prejudice to the defendant which justifies the Court in refusing permission to the plaintiff to dismiss is more carefully considered, and it is no longer true that "the incidental annoyance of a second litigation upon the subject matter" furnishes no ground for denying the plaintiff's motion for a voluntary dismissal.

The U. S. Court of Appeals for this Circuit in the case of Piedmont Interstate Fair Ass'n v. Bean, 4 Cir., 1954, 209 F.2d 942, has expressed itself on this question. The record in this case indicates that considerable time and expense have been consumed by the defendant's attorneys in preparing this case for trial. It has been pending since September 17, 1953. The Court is justified in reaching the conclusion that the plaintiff has not made himself available for oral examination under the Rules of Civil Procedure as heretofore directed by the Court. It is also reasonable to assume from the record that if plaintiff's motion is granted, he will bring a new action in the State Court for less than the jurisdictional

amount of the Federal Court, thereby placing upon the defendant the annoyance of a second litigation and depriving it of substantial rights for discovery under the Federal Rules of Civil Procedure. Furthermore, if the defendant is protected by its Tariff Regulations and Conditions of Contract, the same would be true in the State Court as well as in the Federal Court; therefore, no good reason exists for a delay in determining this issue which would be applicable irrespective of the jurisdiction in which this case is tried.

It is believed, however, that if the plaintiff will present to the defendant a claim for any sum of money to which he is entitled under the defendant's Tariff Regulations on file with the Civil Aeronautics Board and the "Conditions of Contract" attached to plaintiff's ticket, the same will be paid by the defendant without the necessity of litigation. Defendant in its answer has admitted that it has been ready and willing to pay plaintiff any sum of money to which he is entitled under said Tariffs and applicable Conditions.