NEW YORK AND HONDURAS ROSARIO MINING COMPANY, Appellant, v. RIDDLE AIRLINES, INC., Respondent.

First Department, April 30, 1957.

458

*Robert F. Doran* of counsel (*Bailey & Muller,* attorneys), for appellant.

*Benedict Ginsberg* for respondent.

VALENTE, J. The plaintiff, in San Salvadore, delivered to Transportes Aereos Nacionales, S. A., a Honduran corporation authorized to fly cargo to the United States (hereinafter referred to as TAN) 25-pound bars of dore bullion — partially processed gold and silver ore — of a declared or released value of $100, and consigned to the American Smelting Company at Perth Amboy, New Jersey. The actual value of the shipment was in excess of $50,000.

It appears from the testimony that TAN'S certificate of authority to carry freight in the United States did not extend beyond Miami. In instances where TAN undertook to fly cargo beyond Miami it availed itself of the services of connecting

carriers[1] to complete the delivery. In this case it used the Riddle Airlines, Inc., the respondent herein. TAN issued an airway bill which set forth the portion of the journey to be covered by TAN, the portion to be covered by Riddle and fixed the charges for TAN and for Riddle. The charge for the transportation from El Salvador to Miami was at the rate[2] of $68.40, which was in accordance with TAN'S filed tariffs. The charge for transportation from Miami to New Jersey by the defendant Riddle was at the rate of $49.74, which TAN collected for Riddle. This rate was in accordance with Riddle's weight rate as listed in its tariff but not in accord with its valuation requirement.

It is conceded that while in the custody of Riddle, six of the bars of the value of $27,811.82 were lost in transit from Miami to destination. Plaintiff sued Riddle in contract to recover this sum. At the trial Riddle defended that as an interline carrier for TAN its liability was limited to the value of the shipment declared by plaintiff in TAN'S airway bill, viz., $100. The trial court limited plaintiff's recovery to $100, from which finding plaintiff appealed to this court.

The record discloses that the plaintiff shipper, the owner and operator of gold and silver mines in South America, negotiated with various airlines with a view to obtaining the lowest possible freight rates for the transportation of its bullion from El Salvador to New York. TAN'S tariff filed with the Civil Aeronautics Board at that time did not permit it to carry the bullion at less than actual value. The plaintiff did not wish to pay transportation based on the actual value of the bullion because it carried separate insurance and its insurance carrier had consented that the bullion be shipped at a reduced value in order that the plaintiff might have the advantage of a lower freight rate. Upon plaintiff's insistence, TAN amended its tariff so as to make available to its customers a choice of rates. This is reflected in the airway bill that provided: " (3) A choice

---

[1] Condition (4) of TAN'S airway bill permits substitution of alternative carriers and provides: " The shipper hereby accepts * * * the tariff(s), classifications, rates, regulations and conditions of carriage of the Carrier(s) ". Condition (2) provides: " Transportation hereunder * * * is also subject to the * * * tariffs * * * of the Carrier(s) which are hereby made a part hereof ".

[2] Rate is based upon two factors, weight and value. The weight rate is constant. The value rate is variable, depending upon the value declared. In this case, TAN'S weight rate was 10 cents per pound plus 8 cents per hundred dollar valuation. Riddle's weight rate was $8.74 per hundred pounds plus 10 cents per hundred dollar valuation.

of rates according to value having been offered, the shipper agrees that the liability (if any) of the Carrier(s) shall in no event exceed the Shipper's Declared Value for Transportation stated on the face hereof, upon which charges for carriage are partly based, liability for partial loss or damage to be computed pro-rata on the basis of such declared value.''

Following the amendment of TAN'S tariff, a number of shipments were made without incident until the one in issue. The testimony indicates that the fixation and apportionment by TAN of Riddle's charges in the airway bill was with the knowledge and upon prior approval of Riddle.

There is some evidence of communication between the plaintiff and Riddle as to weight rate but plaintiff's witness testified that no independent steps were taken concerning the fixation of a charge or rate based on value.

Riddle's rates, rules and regulations for the transportation of air freight filed with the Civil Aeronautics Board,[3] and in effect at the time in question, limited its liability to 50 cents per pound unless a higher value was declared; but as to dore bullion they specifically provided that such cargo would be accepted only if the actual value was declared on the airway bill, in which case transportation charges would be assessed on the weight and the actual value of the shipment.

Thus the provision by TAN in the airway bill for transportation of the bullion by Riddle from Miami to New York at a rate computed on a $100 valuation was not in conformity with Riddle's tariffs. The issue that we must resolve is whether the provision in TAN'S tariff giving the shipper the choice of fixing a value less than the actual value or the use of a so-called released value inured to the defendant — a connecting carrier.

The learned trial court properly found that the defendant deviated from its tariff provision that dore bullion, '' will be accepted only if the actual value is declared on the airway bill at the time of acceptance ''. However, when it went on to find that, notwithstanding, the released value fixed in the airway

---

[3] Civil Aeronautics Act of 1938 (U. S. Code, tit. 49, § 401 *et seq.*) makes this requirement: '' § 483. Tariffs of air carriers. (a) Every air carrier and every foreign air carrier shall file with the Board, and print, and keep open to public inspection, tariffs showing all rates, fares, and charges for air transportation between points served by it, and between points served by it and points served by any other air carrier or foreign air carrier when through service and through rates shall have been established, and showing to the extent required by regulations of the Board, all classifications, rules, regulations, practices, and services in connection with such air transportation.''

bill inured to the benefit of the defendant as an agent of the original carrier or as a connecting or terminal carrier, it erred.

TAN'S tariff could inure to Riddle only in the event that an interline agreement between TAN and Riddle was in existence. Such an arrangement contemplates an agreement wherein the carriers agree to act as connecting carriers, each for the other. This arrangement permits a carrier to accept for transportation shipments that are beyond the limits provided in its certificate of authority. However, to be effective, such agreements must be filed with the Civil Aeronautics Board.[4] In addition, through rates to the point of destination must be provided in the tariffs as well as charges between intermediate points served by the carriers who are parties to the agreement (see n. 3). Section 221.34 of the Economic Regulations of the Civil Aeronautics Board makes further provision for filing of pooling and other agreements and specifically provides that "the names of all carriers which participate in a tariff shall be shown in alphabetical order in one list with the power of attorney or concurrence number of each carrier shown opposite its name." The requirements for filing and listing are mandatory.

TAN'S tariff provisions are not in evidence, so there is no way of knowing what they provide, except that TAN'S manager testified that TAN had no through rates or services. There is testimony of the existence of an interline agreement, but no proof that it was in effect at the time of the loss and there is no proof of the existence of any through rates having been authorized, approved or filed by either carrier.

There is no basis upon which the defendant could be considered an agent of TAN, because TAN had no authority to carry beyond Miami. If the shipper authorized TAN to use Riddle's facilities, that would not permit TAN to fix any rates for Riddle's services that were different from the rates set forth in Riddle's tariffs.

The deviation from the filed tariff rates that occurred when Riddle accepted the bullion for carriage under the terms set

---

[4] U. S. Code, tit. 49, § 492. "Pooling and other agreements. (a) Every air carrier shall file with the Board a true copy * * * of every contract or agreement * * * affecting air transportation * * * entered into * * * between such air carrier and any other air carrier * * * for pooling or apportioning earnings, losses, traffic, service, or equipment, or relating to the establishment of transportation rates, fares * * *

" (b) The Authority shall by order disapprove any such contract or agreement * * * that it finds to be adverse to the public interest * * * and shall by order approve any such contract or agreement * * * that it does not find to be adverse to the public interest".

forth in the airway bill is prohibited.[5] An air carrier is specifically prohibited from charging or receiving a greater, less or different rate than those specified in its concurrently effective tariffs. The primary purpose of this act is to assure uniformity of rates and services to all persons using the facilities of an air carrier. When a carrier files its rates with the Civil Aeronautics Board, the tariffs become a part of the contract of carriage as if they (the tariffs) were part of the contract. The primary responsibility for supervising rates and services is with the Civil Aeronautics Board and, accordingly, the broad regulatory scheme encompassed in the act and not the common law must govern the contract of the parties (*Lichten* v. *Eastern Airlines,* 189 F. 2d 939; *Mack* v. *Eastern Air Lines,* 87 F. Supp. 113).

Tariffs filed by an air carrier under this act are equally as binding as those filed under the Interstate Commerce Act. In the *Lichten* case (*supra*) the court stated at page 941: "In its purpose, as in its general statutory provisions, the Civil Aeronautics Act is similar to the Interstate Commerce Act." (See, also, *Jones* v. *Northwest Airlines,* 22 Wash. 2d 863.)

We pass next to a consideration of the consequences that ensue from a violation of a filed tariff.

The rule to be applied in such cases is succinctly stated in American Jurisprudence (Vol. 6, Aviation, § 49) which reads: "A specific contract for transportation which is inconsistent with the provisions of the carriers' tariff schedule filed pursuant to the provisions of the Civil Aeronautics Act is invalid and unenforceable". This rule was cited with approval in *Trammell* v. *Eastern Air Lines* (136 F. Supp. 75) and *Wittenberg* v. *Eastern Air Lines* (126 F. Supp. 459).

Since the rights and duties of shippers and carriers under the Civil Aeronautics Act are similar to those imposed by the provisions of the Interstate Commerce Act (*Lichten* v. *Eastern Air Lines, supra*), the statement of the Court of Appeals in *Burke* v. *Union Pacific R. R. Co.* (226 N. Y. 534, affd. sub nom. *Union Pacific R. R. Co.* v. *Burke,* 255 U. S. 317) is pertinent.

---

[5] Civil Aeronautics Act of 1938; U. S. Code, tit. 49, § 483: "(b) No air carrier or foreign air carrier shall charge or demand or collect or receive a greater or less or different compensation for air transportation, or for any service in connection therewith, than the rates, fares, and charges specified in its currently effective tariffs; and no air carrier or foreign air carrier shall, in any manner or by any device, directly or indirectly, or through any agent or broker, or otherwise, refund or remit any portion of the rates, fares, or charges so specified, or extend to any person any privileges or facilities, with respect to matters required by the Board to be specified in such tariffs, except those specified therein."

.

In discussing a deviating bill of lading in an analogous set of facts[6] the Court of Appeals stated at page 543: "Any provision in it [bill of lading] inconsistent with a content of the classifications or schedules is void. It is not now open to discussion that the duly established and filed tariffs are absolutely binding upon all persons who are parties to a contract of interstate transportation. They have the force of a statute. They cannot be varied under any pretext. No party can lawfully depart from them. (*Louisville & Nashville Railroad* v. *Maxwell,* 237 U. S. 94, 97; *Dayton Coal & Iron Co. Ltd.* v. *Cincinnati, New Orleans & Texas Pac. Ry.,* 239 U. S. 446; *Erie Railroad Co.* v. *Stone,* 244 U. S. 332.) "

The United States Supreme Court in affirming stated at page 319: " By these schedules the carrier was bound, and to them it was limited, in contracting for traffic. *Southern Ry. Co.* v. *Prescott,* 240 U. S. 632, 638."

In sum, Riddle was bound by its filed tariff, which dictated that it carry dore bullion at its actual value. TAN'S released value did not inure to Riddle. Riddle failed to protect itself by amending its tariff to cover the instant situation as TAN did. Neither did Riddle establish the existence of any interline agreement which would have overcome the present situation. When it accepted the shipment with a released value, it deviated from its tariff. Such a deviation is discriminatory[7]. This renders ineffectual the released value fixed in the airway bill and Riddle's liability is that of an insurer and as such it must respond for the actual value of the lost bullion. (Cf. *Emily Shops* v. *Inter-State Truck Line,* 207 Misc. 557, affd. 1 A D 2d 667, affd. 2 N Y 2d 405.)

It matters not that the real party in interest is the plaintiff's insurance carrier and that a reduced tariff was sought with

---

[6] The facts in *Twentieth Century Delivery Service* v. *St. Paul Fire & Marine Ins. Co.* (242 F. 2d 292), relied on by the appellant, are different from those in the *Burke* case and in the case at bar. There the airway bill contemplated a single contract for a single carriage from pick up to delivery. The quoted tariffs purported to and did make provision for every item incident to the carriage, including the participation of *20th Century* as the carrier's agent. The case can be further distinguished because it does not appear that there was any obligation on the part of *20th Century* to file any tariffs with any authority.

[7] U. S. Code, tit. 49, § 484. "Rates for carriage of persons and property. * * * (b) No air carrier or foreign air carrier shall make, give, or cause any undue or unreasonable preference or advantage to any particular person, port, locality, or description of traffic in air transportation in any respect whatsoever or subject any particular person, port, locality, or description of traffic in air transportation to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

the knowledge and consent of the insurer. It cannot be argued that the trial court gave the plaintiff shipper just what it bargained for, because in order to maintain uniform rates and restrain the abuses and discriminations that might otherwise flourish, the statute has prescribed the framework within which the shipper may make his bargain. There cannot be an estoppel that would work against the shipper because of the supervening public policy above enunciated and individual indignation must yield to it.

Accordingly, for the reasons indicated, the judgment of the court below must be modified to provide for the recovery by the plaintiff of the sum of $27,811.82 with interest instead of the sum of $100.

PECK, P. J., BREITEL, BOTEIN and FRANK, JJ., concur.

Judgment unanimously modified in accordance with the opinion herein so as to provide for the recovery by the plaintiff of the sum of $27,811.82 with interest instead of the sum of $100. Settle order on notice.